**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SUSAN KENT, CARLOS GARCIA,
MAUREEN KELLMAN, KEN JOHNSON,

|  | Plaintiffs, | 1:17-CV-268 |
|---|---|---|
| v. |  | (GTS/CFH) |

THE NEW YORK STATE PUBLIC EMPLOYEES
FEDERATION, AFL-CIO, et al.,

                                    Defendants.

**APPEARANCES:**                    **OF COUNSEL:**

DuCharme, Clark Law Firm            CHERYL L. SOVERN, ESQ.
10 Maxwell Drive, Ste. 205
Clifton Park, New York 12065
Attorneys for plaintiffs

Pitta LLP                           ANDREW D. MIDGEN, ESQ.
120 Broadway, 28th Fl.              BARRY N. SALTZMAN, ESQ.
New York, New York 10271
Attorneys for defendants

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

**MEMORANDUM-DECISION & ORDER**

For a detailed account of the facts and claims underlying this action, reference is

made to the complaint. Dkt. No. 1 ("Compl."). Presently pending before the Court is

defendants' The New York State Public Employees Federation, AFL-CIO ("PEF");

Wayne Spence, Kevin Jones, and Don Morgenstern's (collectively, "defendants")

Motion for a Protective Order, pursuant to Federal Rules of Civil Procedure (" Fed. R.

Civ. P.") 26(c). Dkt. Nos. 49-52. Plaintiffs opposed the Motion. Dkt. Nos. 54, 55, 56.

Defendants filed a reply. Dkt. No. 58. For the following reasons, defendants' motion is

granted in part and denied in part.

## I. Legal Standards

"Fed. R. Civ. P. 26(c) provides that any party, for good cause, may seek a protective order to preclude or limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c). Before a protective order is issued, Rule 26(c)(1) requires a showing of "good cause." Burks v. Stickney, et al., No. 9:16-CV-0759 (FJS/DEP), 2017 WL 1401312, at *4 (N.D.N.Y. Apr. 19, 2017) (citing FED. R. CIV. P. 26(c)(1)); Schiller v. City of N.Y., No. 04 Civ. 7922 (KMK/JCF), 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007)); cf. In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145 (1987) ("[I]f good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection."), cert. denied sub nom. Dow Chem Co. v. Ryan, 484 U.S. 953 (1987), superseded by statute on other grounds Iridium India Telecom Ltd. v. Motorola, Inc., 165 F. App'x 878, 880-81 (2d Cir. 2005). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Instead, "[a] party may meet its burden to establish good cause by setting forth 'particular and specific facts.'" Sharpe v. Cty. of Nassau, No. 15-6446 (ADS) (AYS), 2016 WL 7350690, at *4 (E.D.N.Y. Dec. 19, 2016) (quoting Rofail v. United States, 227 F.R.D. 53, 54 (E.D.N.Y. 2005)). It is well-established that "'[t]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order.'" Gambale v. Deutsche Bank AG, 377

F.3d 133, 142 (2d Cir. 2004) (quoting In re "Agent Orange" Product Liability Litig., 821 F.2d 139, 145 (2d Cir. 1987)).  The question "whether a movant has demonstrated good cause is an "unusually fact-sensitive" inquiry."  Condit v. Dunne, 225 F.R.D. 113, 116 (S.D.N.Y. 2004) (citing Michael Hoenig, Protective Confidentiality Orders, N.Y. L.J., Mar. 5, 1990, at 6).

"'[I]f the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order.'"  Rofail, 227 F.R.D. at 55 (quoting Hasbrouck v. BankAmerica Hous. Svcs., 187 F.R.D. 453, 455 (N.D.N.Y. 1999) (additional citations omitted)).  "'Such countervailing interests might include whether the order will prevent the threatened harm, whether there are less restrictive means of preventing the threatened harm, the interests of the party opposing the motion, and the interests of the public.'"  Am. News & Info. Svcs., Inc. v. Rovella, 3:15-CV-1209 (RNC), 2017 WL 3736700, at *3 (D. Conn. Aug. 30, 2017) (quoting Dacosta v. City of Danbury, 298 F.R.D. 37, 39 (D. Conn. 2014)) (citations omitted).  Thus, "[i]n determining whether to grant a protective order, a court should weigh the privacy rights of the parties against the general public's interest in the information at issue."  Harris v. Livingston Cty., No. 14-CV-6260 (DGL/JWF), 2018 WL 6566613, at *2 (W.D.N.Y. Dec. 13, 2018) (citing Dorsett v. Cnty. of Nassau, 762 F. Supp.2d 500, 514-15 (E.D.N.Y. 2011), aff'd sub nom. Newsday LLC v. Cty. of Nassau, 730 F.3d 156 (2d Cir. 2013)).  "There is no public right of access to materials produced during the initial stages of discovery."  Id. (citing Terrorist Attacks on Sept. 11, 2001, 454 F. Supp.2d 220, 222 (S.D.N.Y. 2006)).  Generally, however, "[i]n the absence of

such a protective order, 'parties to a law suit may disseminate materials obtained during discovery as they see fit.'" <u>Pitsiladi v. Guerrero</u>, No. 07 CIV. 6605 (JGK/JCF), 2008 WL 5454234, at *1 (S.D.N.Y. Dec. 30, 2008) (quoting <u>Jepson, Inc. v. Makita Electric Works, Ltd.</u>, 30 F.3d 854, 858 (7th Cir.1994)); <u>see</u> <u>also</u> <u>Am. News & Info. Svcs., Inc.</u>, 2017 WL 3736700, at *3 ("Generally speaking, dissemination of pretrial discovery materials by the receiving party is not prohibited absent a protective order. Nonetheless, dissemination for non-judicial purposes is unusual and rightly so.") (internal quotation marks and citations omitted).

"It is well-settled that courts have broad power to enter protective orders under Rule 26(c) that prohibit parties from sharing discovery materials with non-litigants (such orders are typically referred to as 'confidentiality orders')." <u>Sharpe</u>, 2016 WL 7350690, at *4 (quoting <u>Dorsett</u>, 800 F. Supp. 2d at 457). However, "[t]he mere fact that some level of discomfort, or even embarrassment, may result . . . is not in and of itself sufficient to establish good cause to support the issuance of protective order. To rise to a level of good cause, any such embarrassment must be substantial." <u>Flaherty v. Seroussi</u>, 209 F.R.D. 295, 299 (N.D.N.Y. 2001).


## II. Arguments

Here, defendants seek a protective order to govern all materials they produce to plaintiffs which would permit either party to designate any discovery documents as "confidential" or "attorneys' eyes only," limiting the use of such documents for litigation purposes only "unless agreed to in writing by the producing Party or so authorized by

further order of the Court." Dkt. No. 52-1 at 3. In their motion, defendants seek specific protection for the following categories of requested materials: (1) executive session transcripts; (2) settlement agreements involving defendants; (3) all documents between defendants and members or employees of PEF relating to plaintiffs; (4) all documents referring to any complaints, formal or informal, against defendant Spence; (5) allegations of embezzlement, fraud, larceny or similar claims; (6) materials that may come from an investigation involving accusations made by nonparty Nikki Brate against defendants Spence and Morgenstern; (7) ethics grievance panel hearing transcripts, reports, documents and ethics violations of nonparty PEF members; (9) disciplinary decisions against PEF members and/or PEF officers in the last ten years. Dkt. No. 50 at 11.

Defendants contend that a protective order is necessary for several reasons, primarily, the documents' sensitive nature, to protect nonparties' privacy, and because plaintiffs seek to publicize certain documents that will lead to embarrassment or harassment of defendants. See generally Dkt. No. 50. Further, defendants indicate that absent a protective order, negotiations for a collective bargaining agreement ("CBA") and campaigning for certain PEF officers will be negatively impacted. Dkt. No. 51 at 2-3; Dkt. No. 50 at 5-6. Citing the "bitter hostilities within PEF," defendants envision that plaintiffs will seek to use documents obtained through the discovery process "for political or personal reasons not only unnecessary for this litigation but inimical to it" and as "footballs for PEF politics." Dkt. No. 50 at 13-14.

Plaintiffs hotly dispute defendants' account of their alleged prior actions, and of

the need for a protective order.  Dkt. No. 56.  Plaintiffs argue that defendants' request

for a protective order is an attempt to "shut down the Plaintiffs' use of such information

in public forums."  Id. at 4.  They argue that defendants

> had no concern of potential embarrassment to the Plaintiffs,
> negative impact on the union as a whole or concerns about
> how their actions would impact others when the Defendants
> commented to the media, posted on Social media, or when
> the Defendants published in online blogs or newsletters.
> These acts against the Plaintiffs negatively impacted their
> reputations in such a way that they felt it necessary to
> commence the underlying action in order to clear their good
> names.  Now, when information may finally be made
> available to the Plaintiffs that could potentially exonerate
> them and clear their names publicly as well as show that the
> Defendants were improperly motivated by political gain and
> not the betterment of the Union, the Defendants seek court
> intervention to shut down the Plaintiffs' use of such
> information in public forums.

Dkt. No. 56 at 4.  They further argue that "information obtained during discovery is

expected to exonerate the Plaintiffs from the public flogging they have endured at the

hands of Defendants and their supporters."  Id. at 15.  In addition, plaintiffs provide "that

the documents and information requested by the Plaintiffs are relevant to the Plaintiffs'

claims and/or the Defendants' affirmative defenses."  Id. at 4.


### III.  Discussion

### A.  Annoyance, Embarrassment, or Harassment

It is abundantly clear from review of the parties' briefs that the relationship

between the parties is contentious at best, and that each side seeks personal

vindication through this action.  See generally dkt. nos. 50, 51, 52, 54, 55, 56, 58.  In

addition to general arguments surrounding their concerns that plaintiffs will use

information gathered in discovery in a harassing way, defendants raise three arguments

addressing specific harm that would come should this Court deny the protective order.[1]

First, defendants argue that to allow discovery to proceed without additional protections

would permit plaintiffs to use discovery material – including some which is confidential

or involves nonparties – for union campaigns and their personal ends.  See generally

dkt. no. 50 at 5.  Second, defendants reference that nonparty Nikki Brate has accused

defendant Morgenstern of making

> inappropriate comments to some unidentified PEF members
> (not Brate) and [Wayne Spence] of not properly addressing the
> unidentified third-party accusations and of trying to intimidate
> and endanger her.  PEF has engaged the services of
> independent outside counsel Meyer, Suozzi, English & Klein,
> P.C., New York, N.Y. to investigate.  That investigation is
> ongoing.  Absent the Order, this critical investigation necessary
> to put these false accusations to rest will be impeded or
> diverted as all concerned must fear public dissemination of
> highly sensitive personal information.

Dkt. No. 51 at 2-3; Dkt. No. 50 at 5-6.  Third, defendants assert that absent a protective

order, negotiations for a new CBA will be negatively impacted as "PEF's negotiation

opponents may exploit every division and weakness, real or imaged, to their advantage

and the disadvantage of PEF members."  Dkt. No. 50 at 3.

Plaintiffs argue that permitting a protective order would be unfair because

plaintiffs would be unable to publicize the discovery material to clear their names as a

result of defendants' alleged comments to media, social medial activity, and

---

[1]  The Court will address defendants' additional arguments of specific harm insofar as it relates to
alleged confidential materials and nonparties separately below.

publications in "online blogs or newsletters." Dkt. No. 56 at 4. Plaintiffs further argue

that defendants have failed to meet their burden of establishing good cause. See

generally Dkt. No. 54.


**1. Plaintiffs' Intention to Publicly Disclose Discovery Material**

As a threshold matter, defendants have not demonstrated a "clearly defined and

serious injury resulting from disclosure" entitling them to a broad protective order based

on plaintiffs' statements that they commenced this action to "clear their good names"

and that they intend to publicly disclose discovery materials to "exonerate them and

clear their names publicly as well as show that the Defendants were improperly

motivated by political gain and not the betterment of the Union[.]" Dkt. No. 56 at 4.

"Case precedent suggests that even when a party admittedly seeks to publicly

embarrass his opponent, no protection should issue absent evidence of 'substantial

embarrassment' or harm." Am. News & Info. Servs., Inc., 2017 WL 3736700, at *3

(quoting DaCosta, 298 F.R.D. at 40 (additional citations omitted)); cf. Burgess v. Town

of Wallingford, No. 3:11-CV-1129 (CSH), 2012 WL 4344194, at *12 (D. Conn. Sept. 21

2012) ("Moreover, Rule 26(c) protection is not warranted here in the absence of a

particular articulated burden, such as, for example misuse of information for financial or

commercial gain, Paisley Park Enter., Inc. v. Uptown Prods., 54 F. Supp.2d 347, 348

(S.D.N.Y .1999); violation of the deponent's constitutional rights, Hobley v. Burge, 225

F.R.D., 221, 226 (N.D. Ill. 2004); or disclosure of trade secrets that would "work a

clearly defined and very serious injury, United States v. International Bus. Mach. Corp.,

67 F.R.D. 40, 46 (S.D.N.Y. 1975))."  Thus, the mere fact that plaintiffs have expressed their intent to publicly disclose information gained through discovery does not, without a specific showing of injury, amount to good cause for the protective order.  Dkt. No. 56 at 4; see, e.g., Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir. 1983) (Rule 26(c) "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes.").

The Court finds as such despite defendants' reference to plaintiffs' alleged[2] conduct of publishing portions of Judge Suddaby's decision in this case or mischaracterizing the Court's actions.  Dkt. No. 51 at 5 ¶12.  Although the Court is not entirely without concern that parties to this case or nonparties may mischaracterize this Court's actions by posting portions of the Court's decisions, drawing conclusions that the Court did not reach, or by providing misleading commentary, Dkt. No. 51-2, the decisions that arise from this case are not ones that defendants seek to protect in their motion.  Thus, although the Court does not condone such behavior, plaintiffs' alleged past conduct of posting portions of this Court's decision would appear distinguishable from defendants' concerns underlying the present motion – that defendants will experience embarrassment, annoyance, or harassment should plaintiffs publicly disclose discovery materials.  Ultimately, the Court finds that defendants' generalized

---

[2]  Plaintiffs dispute defendants' claim that they published Judge Suddaby's  decision at the PEF convention.  Dkt. No. 56 at 7.  Plaintiffs provide that defendants published Judge Suddaby's decision, with commentary, on the PEF website.  Id.

9

concern that plaintiffs' will publicize discovery material that may lead to embarrassment, annoyance, or the need for defendants to respond does not suffice to demonstrate good cause because such claim does not amount to a specific, clearly-defined serious harm or injury.  See generally Estate of Dabela v. Town of Redding, 3:16-CV-534 (RNC), 2018 WL 1445577, at *4 (D. Conn. Mar. 23, 2018) ("The court does not countenance the public dissemination of discovery materials.  However, on the record before the court, [defendants] make[] only vague and general allegations of harm and ha[ve] not shouldered [their] burden of demonstrating good cause, that is, a clearly defined and serious injury, to warrant a protective order.").

Insofar as defendants imply that allowing plaintiffs' to publicly disclose discovery material will lead to something of a media circus, they provide no evidence that media involvement or interest in this case rises to the extreme level recognized by other courts as warranting protective orders.  For example, defendants cite Stern v. Cosby, 529 F. Supp. 2d 417 (S.D.N.Y. 2007), where the Court granted a protective order barring public dissemination of a defendant's deposition transcript or video.  The Court noted that the case had experienced media attention it described as a "frenzy".  Id. at 422. Although there appears to be a certain degree of media interest surrounding the underlying dispute between the parties – plaintiffs reference one article in the Albany Times Union newspaper – it would not appear to be of the degree of media interest present in Stern, a case with a connection to celebrities and salacious accusations of the defendant's alleged attempt to interfere with a potential witness.  See id. at 419, 422-23.  Further, in issuing the protective order for the deposition, the Stern Court

noted that judicial efficiency had been impaired by discovery disclosures, despite the case being "barely two months old".  Id. at 422.  As plaintiffs point out, this is the first discovery dispute in the case at bar.  Id.

Additionally, the protective order sought and granted in Stern was limited in scope; it involved protections for one party's deposition – not the broader protections sought here.  529 F. Supp. at 419.  Defendants' proposed protective order seeks potential application to all depositions.  Dkt. No. 52-1 at 2¶1.  Indeed, the term s of the proposed order permit a party to deem confidential any deposition of "a Party or one of its present or former officers, directors, employees, agents, [or] independent experts retained for purposes of the Litigation."  Id. at 9 ¶13.  Addressing the need to have a protective order over depositions, the defendants' brief discusses only the depositions of nonparties Valerie O'Dell and Lisa King, yet it does not state that defendants seek to limit protection to these two nonparty depositions.  Even if defendants were seeking to limit the protective order's coverage to O'Dell and King's depositions, their proposed reasoning – that absent the protective order, deponents may be less candid because they may want to "avoid attack and ridicule by PEF zealots" – does not suffice to meet their burden of establishing substantial embarrassment or other harm to defendants or other deponents.  Defendants have not provided any persuasive case law supporting their apparent claim that depositions of nonparties who may testify as to "sensitive issues such as contested financial transactions" and "legal opinions" should be entitled to a protective order.  Dkt. No. 50 at 12.  Defendants fail to explain why raising objections during depositions would not suffice to address any questions or topics

defendants deem potentially attorney-client privileged or containing confidential financial information. Defendants have not provided anything beyond general allegations to support their argument that any depositions should be subject to a protective order.   Thus, a protective order over party and nonparty depositions is not warranted at this time.


## 2. Campaigning for PEF Office, Negotiating Collective Bargaining Agreement

Defendants expressed concern that public dissemination of discovery materials could impact an election of PEF officers in June 2018 – a date which has since passed. Assuming future elections are of equal concern to defendants, defendants have not offered a specified harm warranting a protective order.  Dkt. No. 50 at 5.  Defendants' concern appears to be that discovery materials may be publicly disclosed and used in a manner that shines a negative light on defendants Morgenstern and Spence in an attempt to benefit candidates that plaintiffs support and harm defendants' campaigns for PEF office.  Dkt. No. 50 at 5.  This generalized, speculative claim of harm does not suffice to demonstrate good cause for a protective order as defendants fail to provide "particular and specific facts" Sharpe, 2016 WL 7350690, at *4, as to the harm that would be likely to befall the PEF elections absent a protective order.

Further, defendants point out that there are ongoing negotiations for a new CBA "previously reached by the Spence Administration" yet do not identify any specific and serious harm that would come to those negotiations absent a protective order.  Id. at 4-5.  Assuming CBA negotiations are still a concern at the time of this decision, the Court

is left to speculate as to the injury defendants would suffer in the negotiation process absent a protective order.  As the defendants fail to identify a clearly defined and serious injury to CBA negations in the absence of a protective order, and instead rely on conclusory and speculative statements for its need, they have not met their burden and the request is denied.  See, e.g., Chevron Corp. v. Donzinger, 325 F. Supp. 3d 371, 387 n.58 (S.D.N.Y. 2018) (quoting Huthnance v. District of Columbia et al., 255 F.R.D. 285, 296 (D.D.C. 2008) ("A court will not grant a request that relies on 'conclusory or speculative statements about the need for a protective order and the harm that will be suffered without one.'").

### 3.  Investigation re: Nikki Brate Allegations

Defendants appear to seek a protective order regarding materials relating to allegations apparently made against defendants Morgenstern and Spence by nonparty Nikki Brate.  Dkt. No. 50 at 5.  It is not clear exactly which documents defendants seek protection for in relation to this investigation.  Defendants do not provide any specifics on the harm they believe will occur as a result of public disclosure of any documents that may relate to this investigation.  See id.

In plaintiff Kent's affidavit, submitted in support of plaintiffs' opposition, Ms. Kent contends that the investigation relating to Ms. Brate

> has no bearing on the discovery that is being requested in this matter and should have no bearing on whether the court grants the Defendants' motion for a protective order.  Ms. Brate is not a party to this action.   More to the point, if discovery sought is relevant to good faith allegations or

> defense in an action, the mere fact that discovery material may be used in other litigation elsewhere does not mandate a protective order in fact, it could be argued that it adds to the judicial expediency.

Dkt. No. 54 at 5 ¶5.

The Court concludes that defendants have not established good cause for a protective order for unidentified documents that may relate to Ms. Brate's accusations or related investigation as defendants have failed to identify any specified or serious harm that may result in the absence of a protective order. Accordingly, defendants' request is denied as to these documents.

### B. "Confidential" Information

### 1. Executive Sessions

Defendants contend that a protective order is necessary as public dissemination of executive session transcripts and/or videos "would per se destroy the confidentiality of executive sessions utilized by PEF in self-governance at the heart of both the LMRDA and Judge Suddaby's decision." Dkt. No. 50 at 10. Defendants opine that "limiting access to Executive session debate allows the members of PEF's governing bodies to explore and argue sensitive issues with requisite frankness." Id.

Plaintiffs provide that their demands requested, "executive session transcript and video from the 2016 PEF Convention when the credentials committee tried to unseat the Plaintiffs as delegates," and "[e]xecutive session transcript from the 2016 Executive Board session that denied the Plaintiffs' appeal of the Hearing Panel decision against

the plaintiffs." Dkt. No. 56 at 16. Plaintiffs clarify that these demands "refer[] to comments, dialogue and information pertaining to the Plaintiffs and do not seek all executive session dialogue." Id.

The Court finds that defendants have not demonstrated good cause for a protective order over the requested executive board session transcripts. Although the participants of the requested executive board sessions may have understood them to be confidential in nature, defendants' concern that confidentiality of future executive board sessions may be compromised is speculative. As plaintiffs have indicated that they seek the portions of these two executive transcripts that are limited to discussions regarding plaintiffs, this request would appear narrowly tailored enough such that potential public disclosure would not lead to future confidentiality concerns in executive sessions. As plaintiffs have clarified that their request is limited to portions of the executive session denying their appeal of the hearing panel decision and "comments, dialogue, and information pertaining to Plaintiffs" relating to the executive session "when the credentials committee tried to unseat the Plaintiffs as delegates," defendants should be able to redact portions of transcripts and/or video the reflect only those portions involving plaintiffs. Dkt. No. 56 at 16.

To the extent that defendants contend that the protective order is warranted because they will need to publicly respond/defend themselves should plaintiffs publicize portions of the requested executive board session transcripts, the concern that plaintiffs may publicize material with the intent to "vindicate" themselves or in an attempt to "prove" their accusations in a manner in which defendants disagree, without more, fails

15

to identify a specific, serious injury.  To the extent that the requested sessions'
transcripts/videos contain matters not related to plaintiffs, defendants may redact those
portions.  Accordingly, defendants' request for a protective order for the requested
executive session transcripts/videos is otherwise denied.

## 2.  Settlement  Agreements

Plaintiffs request settlement agreements "involving PEF and allegations of
embezzlement, fraud, larceny or similar claims," "Settlement agreements involving
PEF," and "Settlement agreements involving Defendants." Dkt. No. 50 at 11.
Defendants contend that "complaints are made and settled, even if baseless, but take
on a life and harm of their own when bandied about by bitter partisans on the internet."
Id. at 11.  Plaintiffs argue that settlement agreements are not broadly precluded from
disclosure.  Dkt. No. 56 at 13.

The harm defendants suggest that may come in the absence of a protective
order protecting against settlement agreements involving defendants is that plaintiffs
may imply, or members of the public may themselves believe, that parties to the
settlement agreement have actually committed/admitted the wrongdoing alleged.
Plaintiffs have not provided their rationale for requesting all settlement agreements
involving defendants.  Regardless of plaintiffs' intent, it is clear that plaintiffs seek to
publicly disclose information obtained from settlement agreements.

In addressing whether to apply protective orders for settlement agreements,
some Courts, including this District, have cited a strong public policy favoring settlement

of claims as good cause for issuing a protective order for confidential settlement agreements.  See, e.g., Hasbrouck v. BankAmerica Housing Svcs., 187 F.R.D. 453, 459 (N.D.N.Y. 1999) ("While protecting the confidentiality of settlement agreements encourages settlement, which is in the public interest, permitting disclosure would discourage settlements, contrary to public interest."); (Prosurance Grp., Inc. v. Liberty Mut. Grp., Inc., 10-CV-2600 (LHK), 2011 WL 704456 (N.D. Cal. Feb.18, 2011); Daniels v. Bursey, No. 03 C 1550, 2006 WL 468015, at *4 (N.D. Ill. Feb. 23, 2006) (strong public policy favoring settlement of claims was "good cause" to issue protective order for a confidential settlement agreement).  However, courts have also recognized the "countervailing public interest" in "affording a litigant the opportunity to broadly discovery information in support of its case.  Hasbrouck, 187 F.R.D. at 458.  Although this Court recognizes that the confidential nature of a settlement agreement does not automatically entitle defendants to a protective order, it finds significant the fact that parties to a confidential settlement agreement proceeded with the understanding that the terms of the settlement agreement would remain confidential amounts to a showing of good cause.  Further, as the confidential settlement agreements would likely involve many nonparties, the Court must be cognizant of the privacy interests of those nonparties.  Id. (citing Blum v. Schlegel, 150 F.R.D. 38 (W.D.N.Y. 1993) (considering fairness to nonparties by disclosure)).

The defendants' interest in maintaining the confidentiality of these settlement agreements, along with a strong public interest in promoting settlements, weighs in favor of a protective order.  By contrast, plaintiffs do not present a strong interest that

would favor full disclosure of confidential settlement agreements. Significantly, defendants do not appear to seek to prevent plaintiffs and their counsel from accessing the settlement agreements for litigation purposes; rather, defendants to limit those settlement agreements for use in this litigation only. Thus, plaintiffs would not be prevented from accessing the requested settlement agreements for purposes of litigating this case. After consideration of the equities, the Court finds that defendants' interest in protecting confidential settlement agreements by limiting their disclosure to use in this litigation and the strong public interest favoring settlement weigh more strongly than the plaintiffs' interest in being able to publicly disclose the contents of the settlement agreements. Accordingly, defendants' motion is granted and any confidential settlement agreements involving defendants or those "involving PEF and allegations of embezzlement, fraud, larceny or similar claims," will be subject to a protective order limiting their disclosure to use in this case. Dkt. No. 50 at 11.

### 3. Ethics Hearing Panel Grievances, Deliberations, Reports

Defendants contend that ethics hearing panel grievances, deliberations, and reports require a protective order as the confidentiality of these documents is presumed and participants in these grievances rely on an understanding that the proceedings and related materials are confidential. Defendant Spence's affidavit submitted in support of defendants' motion provides that the grievance process is

> enthusiastically used by its sometimes warring members to complain about real or imagined slights, harassment, defamation, misuse of funds, threats, personal relations,

> sexism, bigotry and other bad acts, often in vivid, unsparing terms. Whatever the merits, PEF's ethics grievance process is an internal matter; neither grievant, nor accused, their advocates nor judges expect or can work effectively when they know what every accusation and deliberation will be second-guessed in the media or online chat rooms.

Dkt. No. 51 at 3-4 ¶8. Plaintiffs contend that nonparties do not need protection relating to grievances filed because their request is "narrowly tailored to help support the Plaintiffs' claims or to defend against the affirmative defenses of the Defendants." Dkt. No. 56 at 18. Further, plaintiffs argue that the requested grievance documents "do not pertain to employees, but rather to other members of the PEF union" and "there is no inherent privacy protection attached to membership or individual activities in a union such that a protective order would be appropriate." Id. Finally, plaintiffs suggest that the Court should not permit a protective order because defendants "had no problem releasing such information to the media when the Plaintiffs were the subjects." Id.

The Court finds that defendants have demonstrated good cause for a protective order for ethics hearing panel grievances, deliberations, and reports. Although the Court is not aware of any case addressing similar requests for protective orders relating to internal grievance decisions or deliberations, the Court finds significant that parties who formally proceed through the grievance process do so with the understanding that the matter is confidential. Unlike the defendants' concern with confidentiality of executive sessions, which the Court finds speculative, removing the veil of confidentiality from grievance panel proceedings is likely to strongly dissuade members with legitimate complaints or concerns from coming forward and using the grievance procedure in place. Plaintiffs argue that any concerns about protections or

19

confidentiality to nonparties involved in the grievance process is limited because their demands are narrowly tailored, involve union members rather than employees, and because there is no privacy protections inherent in union membership or activity. However, plaintiffs argument does not address the concern that participants in the grievance procedure believed the procedure to be confidential, and that the integrity of such a confidential procedure is significant to ensure the success and merit of such a process by which members can address concerns. The balance of interests, therefore, tips more heavily in favor of a protective order to retain the confidentiality of these internal investigations and decisions.[3] Accordingly, defendants' request for a protective order limiting use of grievance panel deliberations and reports to this litigation is granted.

### 4. All complaints, formal or informal, against Wayne Spence and "Allegations of embezzlement, fraud, larceny or similar claims" against defendants

Defendants contend that plaintiffs' demand for all complaints, both formal and informal, against defendant Spence would "inflict serious harm on each individual Defendant and PEF" if not used solely in litigation. Dkt. No. 51 at 4. To the extent that there exist informal complaints or allegations against Wayne Spence, the Court finds that defendants have not demonstrated a clearly defined injury that would result from public access to informal complaints. Unlike complaints formally filed through a

---

[3] The Court is not concluding that internal grievance procedures can never be disclosed publicly, but in the facts of the case as presented, the Court finds that the balance of interests weigh in favor of protection from public disclosure.

grievance procedure, where the grievant would be accorded a degree of confidentiality, no such protections would appear to attach to informal complaints or accusations. To the extent plaintiffs demand seeks "formal complaints" against defendant Spence, it is unclear whether "formal complaints" differ from complaints that have proceeded through the grievance process. To the extent that formal complaints against Spence proceeded through the grievance process, those complaints are subject to the protective order, for the reasons discussed above.[4]

Insofar as plaintiffs demand "allegations of embezzlement, fraud, larceny or similar claims," it is unclear whether this allegation limited to allegations involving defendants, or allegations against all members of PEF.[5] Insofar as plaintiffs seek allegations of embezzlement, fraud, or larceny against named defendants, defendants have failed to demonstrate good cause for a protective order as to such documents because, as noted above, they have not identified a specific and serious injury that may result in the absence of a protective order. Accordingly, defendants' request for a protective order for plaintiffs' demand of all informal complaints against defendant Spence and all allegations of embezzlement, fraud, larceny or similar claims is denied. Insofar as plaintiffs seek formal complaints against defendant Spence that have proceeded through the formal grievance process, such complaints are subject to the protective order for the reasons discussed above. To the extent formal complaints

---

[4] To the extent "formal" complaints against defendant Spence differ from matters filed through the grievance procedure, the Court does not have sufficient information before it to determine whether such complaints should fall under the protections of a protective order.

[5] Any demand for such allegations against nonparties will be addressed below.

against defendant Spence were submitted through a different system or format, a protective order is denied as the Court does not have before it sufficient information to determine whether such complaints should fall under the protections of a protective order.

### C. Discovery Involving Nonparties

Defendants seek a protective order relating to plaintiffs' demand numbers fifteen and twenty-one, which request ethics violations of nonparties and disciplinary decisions against "PEF members and/or officers in the last ten (10) years." Dkt. No. 50 at 11.[6] Defendants also appear to seek a protective order for depositions involving nonparties. Dkt. No. 50 at 11-12. Plaintiffs contend that a protective order is not needed for the requested discovery relating to nonparties because their demands are "narrowly tailored to help support the Plaintiffs' claims or to defend against the affirmative defenses of the Defendants" and that "there is no inherent privacy protection attached to membership or individual's activities in a union such that a protective order would be appropriate." Dkt. No. 56 at 18.

### 1. Ethics Violations, Disciplinary Determinations, and allegations of embezzlement, fraud, or larceny of Nonparties

Defendants seek a protective order insofar as plaintiffs demand production of ethics violations of nonparties, disciplinary determinations involving defendants, and

---

[6] The plaintiffs' demands are not a part of the record. Thus, the Court relies on the parties' estatements of the requests.

"accusations" of embezzlement, fraud, and larceny "against PEF members and/or officers in the last ten (10) years." Dkt. No. 50 at 11. Defendants suggest that these requests should be subject to the protective order because it would subject nonparties to harassment. Id. at 11-12.

Insofar as plaintiffs request ethics violations of nonparties or disciplinary determinations involving nonparty PEF members or nonparty PEF officers from the last ten years, or allegations of embezzlement, fraud, or larceny, the Court agrees that certain protections should be made to protect nonparties. However, defendants fail to explain why redaction to protect the identities of nonparties' identities involved in ethics violations and disciplinary determinations, both accused and substantiated, would not suffice to satisfy defendants' concerns. Accordingly, they have not demonstrated good cause for a broad protective order barring any disclosure of ethics violations or disciplinary determinations of nonparties. However, the Court will approve of an order which would require redaction of names of nonparties in any use of such material outside of the case. Insofar as defendants contend that accusations "contain home addresses and telephone numbers," Dkt. No. 50 at 12, they provide no reason as to why redaction of personal addresses and telephone numbers would not cure this concern.

To the extent defendants contend that protection is warranted because "most" accusations are denied "and many are found baseless," Dkt. No. 50 at 12, defendants also fail to explain why redaction of pending violations and determinations would not cure these concerns. Further, for those ethics violations and disciplinary determinations

23

that were deemed substantiated by the integral agency, defendants fail to provide reasons as to why such determinations should be protected. Accordingly, insofar as defendants request a broad protective order for all ethics violations and disciplinary determinations involving nonparties from the past ten years or allegations of embezzlement, fraud, or larceny against nonparties, that request is denied; however, it will be granted to the limited extent that redactions may be as to the names, addresses, contact information, or other identifying information of nonparties involved in the requested documents.

## 2. Nonparty depositions

Defendants request that nonparties' depositions be subject to a protective order limiting their use to the prosecution and defending of this case as questions "are likely to focus on sensitive issues such as contested financial transactions . . . from [non party former PEF employee] O'Dell and legal opinions from [former PEF employee] King." Dkt. No. 50 at 12. Defendants provide that they request the protective order out of "respect for their past and immediate service, the public stature of PEF and the need to assure that deponents' responses are full and candid, not coated or incomplete by the temptation to avoid attack or ridicule for PEF zealots . . ." Dkt. No. 50 at 12. Defendants present no specific harm that would arise should the depositions not be protected. Their allegation that nonparty deponents would not be candid if they knew the depositions may be made publicly available does not suffice to demonstrate good cause. Objections may be raised at depositions, and parties are able to raise claims of

privilege, such as attorney-client privilege, in response to question they legitimately feel are covered by such privilege.  Defendants have provided no case law support for a broad protective order as to depositions in order to encourage candidness of the party and "out of respect" for their work, nor proffered any reason as to why O'Dell or King's depositions – or that of any other nonparty – are entitled to greater protections than that afforded to nonparty deponents in any other case.  Accordingly, defendants request for a protective order for nonparty deposition transcripts or other deposition recordings is denied.

## IV.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that defendants' Motion for a Protective Order (Dkt. Nos. 49-52) is **GRANTED in part** insofar as defendants may:

 (1) implement a protective order limiting the use of the following categories of documents to use in the prosecution or defense of this litigation:

    (a) confidential settlement agreements involving defendants, and

    (b) grievance panel proceedings, deliberations, and reports; and

(2) make redactions to protect the identities of nonparties for the following documents/information:

    (a) "allegations of embezzlement, fraud, larceny or similar claims" against nonparty PEF members;

    (b) ethics violations of nonparties or disciplinary determinations involving

nonparty PEF members or nonparty PEF officers from the last ten years,

(c) portions of the 2016 PEF Convention and 2016 Executive Board executive session transcripts that do <u>not</u> involve plaintiffs/discussion of plaintiffs; and it is further

**ORDERED**, that defendants' Motion for a Protective Order is otherwise **DENIED**; and it is further

**ORDERED**, that (1) within fourteen (14) days from the date of this Memorandum-Decision and Order, defendants will submit to the Court a modified proposed protective order that is reflective of the protections explicitly allowed in this Memorandum-Decision & Order, and (2) plaintiffs will have seven (7) days from the date of defendants' submission to file any objections to defendants' modified proposed protective order and/or submit their own proposed protective order that is in line with the protections explicitly allowed for in this Memorandum-Decision and Order. Thereafter, the Court will consider the proposed protective order(s), adopt a protective order reflective of this Memorandum-Decision & Order, and subsequently lift the discovery stay and set deadlines.

**IT IS SO ORDERED**.

Dated: February 5, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge