UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUSAN KENT; CARLOS GARCIA; MAUREEN
KELLMAN; and KEN JOHNSON,

                              Plaintiffs,

v.                                                      1:17-CV-0268
                                                        (GTS/CFH)
NEW YORK STATE PUBLIC EMPLOYEES
FEDERATION, AFL-CIO; WAYNE SPENCE,
individually and as President of NYS PEF; DON
MORGENSTERN, individually and as a member of
NYS PEF; and KEVIN JONES, individually and as
a member of NYS PEF,

                              Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

SOVERN LAW, PLLC                                        CHERYL L. SOVERN, ESQ.
   Counsel for Plaintiffs
100 Saratoga Village Boulevard, Suite 371
Malta, NY 12020

PITTA, LLP                                              BARRY N. SALTZMAN, ESQ.
   Counsel for Defendants                               ANDREW D. MIDGEN, ESQ.
120 Broadway, 28th Floor
New York, NY 10271

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action pursuant to the Labor Management Reporting

and Disclosure Act ("LMRDA") filed by Susan Kent, Carlos Garcia, Maureen Kellman, and Ken

Johnson ("Plaintiffs") against the New York State Public Employees Federation, AFL-CIO

("PEF"), Wayne Spence, Don Morgenstern, and Kevin Jones, is Defendants' motion for

summary judgment. (Dkt. No. 73.) For the reasons set forth below, Defendants' motion is granted.

## I.  RELEVANT BACKGROUND

### A.  Plaintiffs' Complaint

Generally, in their Complaint, Plaintiffs assert three claims: (1) a claim that Defendants violated the LMRDA (29 U.S.C. § 411[a][5]) by failing to (a) serve Plaintiffs with specific written charges, (b) give them reasonable time to prepare their defense to those charges, and (c) afford them with a full and fair hearing; (2) a claim that Defendants violated the LMRDA (29 U.S.C. § 411[a][2]) by retaliating against Plaintiffs for engaging in protected speech when Plaintiffs followed their own interpretation of their duties under the LMRDA related to conducting an investigation into suspicious spending in one of PEF's Divisions; and (3) a claim that Defendants engaged in breach of contract when they failed to adhere to Article XIX(A) of the PEF Constitution and to various provisions of the PEF Code of Ethics. (Dkt. No. 1, at ¶¶ 145-245 [Pls.' Compl].)

### B.  Undisputed Material Facts on Defendants' Motion for Summary Judgment

The following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and either expressly admitted or denied without appropriate record citations by Plaintiffs in their response thereto. (*Compare* Dkt. No. 76 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 78 [Pl.'s Rule 7.1 Resp.].)

1.  PEF is a labor organization representing more than 54,000 employees in New York State that are employed in a broad variety of professional roles.

2.  PEF is affiliated with parent union American Federation of Teachers ("AFT") and

2

Service Employees International Union ("SEIU").

3. PEF is subdivided into divisions.

4. At all relevant times, Defendants Spence, Morgenstern, and Jones, as well as Plaintiffs Kent, Garcia, Kellman, and Johnson, had been longtime members of PEF.

5. In 2012, Plaintiff Kent was elected as PEF President on a slate she led (known as New York Union Proud) with Defendant Spence as Vice President, Plaintiff Garcia as Secretary-Treasurer, and Plaintiffs Kellman and Johnson as Trustees.

6. After her victory, Plaintiff Kent reappointed Defendant Morgenstern to continue his decade-long chairmanship of PEF's Ethics Committee.

7. PEF's Ethics Committee, whose members are appointed by PEF's President, reviews charges of ethics violations by PEF members to determine whether the matter should be referred "for a hearing before a Hearing Panel," which occurs in situations where "the Ethics Committee finds substantial evidence of a more serious violation of the PEF Constitution, Code of Ethics, or PEF policy."

8. During the spring of 2013, the Treasurer of PEF Division 235 reported concerns about problems obtaining documentation for expenditures from Division 235 Council Leader Deborah Lee.[1]

9. In October 2013, the Secretary of Division 235 requested that PEF perform an audit of the Division.

---

[1] Defendants' asserted fact states that the Division 235 Treasurer requested an immediate investigation in the spring of 2013. (Dkt. No. 76, at ¶ 8 [Defs.' Rule 7.1 Statement].) However, the evidence cited by Defendants does not support that assertion. (Dkt. No. 75, Attach. 2, at 6-7 [Garcia Dep.].) The Court therefore has altered the asserted fact to be consistent with the cited evidence and Plaintiffs' denial.

10.     Plaintiff Garcia declined the Division's request that PEF perform an audit at that time, stating that the Division was required to perform its own internal annual audit (which had not yet been conducted at that time) before any PEF audit could take place.[2]

11.     Plaintiffs Kent and Garcia referred the matter back to the Lee-led Division to complete its own internal audit for 2012-2013.

12.     In October 2013, Defendants Spence and Morgenstern reviewed excerpts of Division 235's ledger that showed that Ms. Lee's personal expenditures for grocery stores, restaurants, and home accessories exceeded $2,000.

13.     During that time, Defendants Spence and Morgenstern requested that Plaintiff Garcia refer the matter to law enforcement authorities.

14.     Plaintiff Garcia declined to contact law enforcement authorities.

15.     PEF Trustees have a duty under the PEF Constitution to periodically review the fiscal records no less than semi-annually in cooperation with the Secretary-Treasurer and a Certified Public Accountant, and to document and report to the membership any activities that they perceive as not being in the interest of the membership; they function independently of the President and Secretary-Treasurer, receive written requests from any member in the organization, and can review a request without the approval of any PEF officer.

16.     In October 2013, Plaintiff Johnson received an oral request from Division 235's Assistant Council Leader Santhosh Thomas for the Trustees to conduct an audit of Ms. Lee's

---

[2]     The Court has omitted the involvement of Plaintiff Kent from the above-asserted declination because the evidence cited by Defendants in support of their asserted fact does not substantiate such involvement by Plaintiff Kent.  (Dkt. No. 22, at ¶¶ 24-26 [Garcia Aff.]; Dkt. No. 75, Attach. 2, at 9-13 [Garcia Dep.].)

expenditures.  Plaintiff Kellman was made aware in early 2014 of Division 235's concern with Ms. Lee's spending.

17.    Plaintiffs Kellman and Johnson made no effort to begin a PEF audit in response to the requests by Division 235; instead, Plaintiffs Kellman and Johnson relied on the Kent Administration's direction to wait until Division 235 completed its internal audit.

18.    In March and April 2014, Mr. Thomas and Division 235 Steward Elizabeth Falco each filed an ethics grievance petition against Ms. Lee.

19.    Subsequently, in 2014, Plaintiffs Kent and Garcia invited Defendant Morgenstern to Plaintiff Kent's hotel room where, for between 10 and 30 minutes or more, they questioned Defendant Morgenstern regarding his decision to move ahead with the Ethics Committee's review of the ethics charges against Ms. Lee.

20.    The Ethics Committee found that Ms. Lee had committed a major violation and directed that the matter be sent to an Ethics Hearing Panel.

21.    Plaintiff Kent appointed the Hearing Panel members entirely from her own supporters.

22.    On the day the hearing was conducted (November 5, 2014), in a one-paragraph decision that cites no evidence, the Kent-appointed Hearing Panel found Ms. Lee not guilty of malfeasance, but only of "negligence in record keeping for the details of the funds spent."

23.    Mr. Thomas and Ms. Falco appealed the decision to the PEF Executive Board.

24.    On December 5, 2014, during Plaintiff Kent's tenure as President, the PEF Executive Board reversed the Hearing Panel's decision and imposed discipline against Ms. Lee in the form of a three-year total membership suspension.

25.    In the June 2015 PEF election, Defendant Spence headed a slate known as the Coalition of Union Professionals ("Coalition") opposing Plaintiffs Kent and Garcia.

26.    Defendant Jones chaired the Coalition as an active member.

27.    Defendant Morgenstern did not campaign for or with Defendant Spence or his slate.

28.    The Coalition campaigned hard against Plaintiff Kent and her slate on, among other points, Plaintiffs Kent and Garcia's conduct regarding Ms. Lee. Plaintiffs could and did actively respond as incumbents.

29.    Plaintiffs Kent and Garcia authorized legal action against Ms. Lee in April 2015.

30.    Defendant Spence's Coalition won the election in June 2015, taking office in August 2015.

31.    In December 2015, just four months after Defendant Spence assumed office (but over two years after Plaintiffs Kent and Garcia rebuffed Division 235's requests), PEF obtained a default judgment against Ms. Lee for $64,104, an amount that was far in excess of the amounts Plaintiff Kent and Garcia claimed were involved based on the internal audit for 2012-2013.

32.    On February 3, 2015, Defendant Jones filed ethics charges against Plaintiffs and other non-plaintiffs for their conduct related to responding to the accusations of misappropriation against Ms. Lee.

33.    Plaintiffs responded to those charges.

34.    The Kent-appointed Ethics Committee, now chaired by a supporter from her slate, dismissed Defendant Jones' charges on July 24, 2015, in a shorter-than-one-page decision.

35.    The Ethics Committee decided the charges on the merits but did not provide

6

details regarding the basis of its finding other than that there were no violations of the PEF Code of Ethics or PEF Constitution.

36.     In August 2015, Defendant Jones appealed the decision to the Executive Board.

37.     Defendant Spence assumed the role of President as a result of the 2015 election, and he appointed Defendant Jones as his Director of Organizing and reappointed Defendant Morgenstern as Chair of the Ethics Committee.

38.     On October 20, 2015, Defendant Morgenstern set the date of Defendant Jones' Executive Board appeal for the December 2015 meeting, and reviewed whether Defendant Jones could continue to pursue his ethics charges against Plaintiffs.

39.     Upon continuing discussions with staff counsel, on October 29, 2015, Defendant Morgenstern first found that Defendant Jones did not have standing to pursue that appeal, but later, on November 13, 2015, notified Plaintiffs that Defendant Jones could proceed on the appeal due to counsel's advice and Defendant Jones' continuation as a dues-paying member still employed by the State.

40.     At the meeting, the Executive Board gave each side five minutes total to present its argument for or against the appeal.

41.     After hearing the arguments presented by both sides, the Executive Board voted to accept Defendant Jones' appeal and overturn the Ethics Committee's dismissal of the charges.

42.     The Executive Board could have decided the case itself, but instead elected to provide both sides a full opportunity to present all facts and arguments before a full Ethics Hearing Panel.

43.     No one, whether PEF's counsel, PEF's parliamentarian, or the Executive Board

itself, raised an issue about or objection to the propriety of proceeding in this manner.

44.     The Ethics Hearing Panel, chaired by Conrad Davis, conducted thee days of extensive hearings on February 17, April 13, and April 14, 2016.

45.     PEF's rules related to Hearing Panel proceedings require only that each side be allotted 15 minutes to present its case.

46.     The Hearing Panel received testimony and documents from the parties, including such witnesses as they chose to call.

47.     Under the PEF Code of Ethics provided to Plaintiffs, they could have been represented by any PEF member (including one who was an attorney) but chose not to do so.

48.     The Hearing Panel itself called for testimony from PEF Director of Finance Valarie O'Dell and PEF Chief Counsel Lisa King.

49.     The Hearing Panel deliberated for an additional three days (April 20, May 17, and August 4, 2016) without the parties present.

50.     The Hearing Panel issued a unanimous 21-page Report and Decision (ERC 2015 001) dated September 2, 2016, in which it laid out the factual and substantive arguments made and the Hearing Panel's conclusions.

51.     The Hearing Panel concluded unanimously that Plaintiffs Kent and Garcia had indeed betrayed their constitutional duties by favoring Ms. Lee over protecting the funds of PEF members, and that Plaintiffs Kellman and Johnson had violated their duties by subordinating their independent duties to the will of Plaintiffs Kent and Garcia.

52.     The Hearing Panel made the following findings in its Report: (a) Plaintiffs Kent and Garcia were aware of "possible significant acts of malfeasance" by Ms. Lee as early as the

2012 Convention and again in March 2013, but did not intervene; (b) as of September 2013, an extract of Ms. Lee's expenditures for April through September 2013 showed numerous personal transactions including 28 for Bed Bath & Beyond, 38 for Lowes, and 48 for Stop & Shop/ShopRite totaling $5,365, but Plaintiffs Kent and Garcia required the Division to conduct its own internal audit rather than have PEF investigate directly as Division members had requested; (c) Plaintiffs Kent and Garcia could and should have referred the matter to the Ethics Committee as early as their receipt of the Trustee's report of misconduct in April 2014, but they did not; (d) the delay in taking action had the potential to subvert the statute of limitations on a potential embezzlement case; (e) when details of Ms. Lee's misappropriations finally were brought to the Ethics Committee through grievances by members of Division 235, Plaintiffs Kent and Garcia privately requested Defendant Morgenstern (as chair of the Ethics Committee) to delay the case; (f) in Fall 2014, Ms. O'Dell found discrepancies from the period between 2012 and September 2013 totaling between $15,000 to $17,000, but she was directed by Plaintiffs Kent and Garcia to reduce that amount to $5,016; and (g) when PEF eventually took legal action, it received a judgment for $64,104.08 against Ms. Lee.

53.    The Hearing Panel also found that the Trustees, including Plaintiffs Kellman and Johnson, did not act independently to safeguard PEF's funds from Ms. Lee.

54.    The Hearing Panel was frustrated that, when it questioned Plaintiffs Kent and Garcia regarding their justification of their inaction, their insistence on internal review by persons under Lee's direction, and their refusal to refer the matter to outside authorities, Plaintiffs Kent and Garcia insisted that they had acted on the advice of Ms. King, but Ms. King had declined to testify about her deliberations with Plaintiffs Kent and Garcia due to attorney-client privilege.

55.     Furthermore, Plaintiffs Kent and Garcia did not waive that purported privilege for the purposes of having Ms. King verify their claims about her advice.

56.     The Hearing Panel could have expelled Plaintiffs from the membership (whether permanently or for a period of time) but chose instead to suspend Plaintiffs Kent and Garcia's ability to serve in PEF office for a period of four and five years, respectively, and to reprimand Plaintiffs Kellman and Johnson.

57.     Plaintiffs appealed the Hearing Panel's decision.

58.     Both Defendant Jones and Plaintiffs were free to provide the Executive Board members with material for or against the appeal, and both did so.

59.     In addition, Plaintiffs submitted letters to PEF's parent unions (AFT and SEIU) detailing Plaintiffs' objections to Defendant Jones' charges.[3]

60.      Plaintiffs had previously copied these letters to all members of the Executive Board who would later hear their appeal from the Hearing Panel.

61.     On November 17, 2016, Defendant Jones and Plaintiffs orally presented their arguments to the Executive Board.

62.     On the same day, the Executive Board voted to uphold the Hearing Panel's decision by a vote of 58 to 51.

63.     Under the PEF Code of Ethics, all members of the Executive Board who are not a party to the grievance at issue can vote.

---

[3]     Defendants' assertion that these letters addressed the Hearing Panel's decision is rejected based on the fact that these letters are dated February 10, 2016, and June 28, 2016, and the Hearing Panel's decision is dated September 2, 2016.  It is therefore a logical impossibility that these letters could have addressed the findings of the Hearing Panel.

**C.  Parties' Briefing on Defendants' Motion for Summary Judgment**

**1.  Defendants' Memorandum of Law**

Generally, in their motion for summary judgment, Defendants make three arguments. (Dkt. No. 77, at 12-26 [Defs.' Mem. of Law].)  First, Defendants argue that Plaintiffs received the appropriate due process required by the LMRDA.  (*Id.* at 12-18.)  More specifically, Defendants argue as follows: (a) Plaintiffs were provided with written specific charges that gave them notice of the alleged misconduct underlying those charges, and to which Plaintiffs submitted a collective response without any indication that the information provided rendered them unable to prepare an adequate defense; (b) Plaintiffs have not shown that they were denied reasonable time to prepare their defense because the LMRDA's "reasonable time" requirement did not apply to the Executive Board's hearing related to Defendant Jones' appeal given that the Executive Board's decision did not impose any discipline on Plaintiffs (but merely overruled the Ethics Committee's dismissal of the charges against Plaintiffs and sent the matter to the Hearing Panel for proceedings), and that, even if it did apply to the Executive Board appeal, the approximately 40 days they were provided to prepare for that hearing was sufficiently reasonable; and (c) Plaintiffs were afforded a full and fair hearing because there was some evidence to support the Hearing Panel's findings and imposition of discipline and Plaintiffs have not provided any specific evidence of bias by the Hearing Panel or the Executive Board.  (*Id.*)

Second, Defendants argue that Plaintiffs' other miscellaneous claims related to the ethics charge process under the LMRDA and contract law are unsupported by evidence.  (*Id.* at 18-22.) More specifically, Defendants argue as follows: (a) Plaintiffs' argument that the Executive Board was required to have a two-thirds majority vote (rather than a simple majority) to send the

charges to the Hearing Panel because such action is not outlined in the Code of Ethics and the

PEF Constitution specifies that Robert's Rules apply in such circumstances is nonsensical in that

they appear to be arguing that the Executive Board should have decided the charges without the

benefit of a full hearing and because the PEF counsel, the PEF parliamentarian, and the

Executive Board all saw nothing improper in sending the charges to the Hearing Panel; (b) the

fact that Plaintiffs received five minutes collectively to speak at the Executive Board related to

Defendant Jones' appeal of the Ethics Committee's dismissal of the charges does not violate any

internal PEF rule and was not prejudicial because Plaintiffs made their arguments collectively

and Defendant Jones received the same amount of time; (c) Plaintiffs' argument that Defendant

Jones lacked standing to bring his appeal is contrary to the record; (d) Plaintiffs' argument that

Defendant Jones' appeal was untimely is erroneous because the triggering event for that

limitations period was in December 2014, not March 2014; (e) Plaintiffs' objections to

Defendant Morgenstern's alleged spontaneous "amendment" of a motion to send the charge

"back to the Hearing Panel" to a motion to send the charge "to a Hearing Panel" caused no

identifiable prejudice; (f) there was no identifiable procedural error or fairness consideration

implicated by the fact that Defendant Jones was an attorney, nor by the fact that PEF attorney

Sharon DeSilva served as the Ethics Committee chair during the Hearing Panel proceedings; (g)

Plaintiffs have offered no support for their contention that the Hearing Panel erred in holding

deliberations at which Plaintiffs were not present, or that the Hearing Panel was required to issue

its report within 30 days after the last hearing at which Plaintiffs were present (as opposed to 30

days after the last day of deliberation); and (h) there was nothing prejudicial in any actions

Defendant Jones took in distributing the Hearing Panel's decision among the Executive Board,

noting that Plaintiffs also had letters outlining their arguments against the Hearing Panel's decision copied to the Executive Board in advance of their appeal.  (*Id.* at 18-22.)

Third, Defendants argue that Plaintiffs have not established their retaliation claim.  (*Id.* at 22-26.)  More specifically, Defendants argue as follows: (a) Plaintiffs have failed to assert any protected speech covered by the LMRDA because the speech alleged concerns actions taken (or not taken) solely in their capacity as officers, and 29 U.S.C. § 411(a)(2) covers only the speech or actions of members (not officers); (b) Plaintiffs do not meet the exception to the general officer rule because they have not provided clear and convincing evidence that Defendants' actions against them were part of a scheme to suppress dissent within the union that would threaten the right of union members to speak out given that (i) Plaintiffs were afforded lesser punishment than could have been imposed, (ii) Defendant Jones filed those charges while Plaintiffs were the administration in control of the union and it was only through an election that Plaintiffs lost that control, (iii) any indication of improper motive by a single member of Defendant Spence's political slate (who is not a Defendant here nor a member of the Hearing Panel that decided Plaintiffs' charges) cannot serve as evidence to impute an improper motive on Defendants, and (iv) there is no evidence of any pattern of harassment or intimidation against Plaintiffs other than the ethics charges and the resulting proceedings; and (c) Plaintiffs' alleged speech (i.e., ostensibly protecting the LMRDA procedural rights of a union division official suspected of misappropriating union money) does not constitute an exercise of a right under the LMRDA.  (*Id.* at 22-26.)

### 2.     Plaintiffs' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, Plaintiffs make three arguments.

(Dkt. No. 81, at 10-26 [Pls.' Opp'n Mem. of Law].) First, Plaintiffs argue that they did not

receive the due process required by LMRDA. (*Id.* at 10-19.) More specifically, Plaintiffs argue

as follows: (a) they were not provided with specific written charges because Defendant Jones'

ethics grievance did not specify which charges applied to each individual Plaintiff and the

Hearing Panel ultimately disciplined Plaintiffs for charges that were not set forth in the original

grievance; (b) they were not afforded a reasonable time to prepare a defense because they were

given only 20 days advance notice of the Executive Board's hearing on Defendant Jones' appeal

and 20 days is insufficient time to prepare for such proceedings given the length and complexity

of the charges and Defendant Jones' failure to provide sufficiently specific charges; and (c) they

were not afforded a fair hearing because (i) the Hearing Panel (appointed by Defendant Spence

from members of his own political slate) was not impartial and all the members chosen for the

Hearing Panel had voted on the decision to overturn the Ethics Committee's dismissal of the

charges, (ii) Defendant Jones was permitted to introduce to the Hearing Panel new evidence that

had not been part of the ethics grievance and which were not shared with Plaintiffs before the

hearing, (iii) the Hearing Panel refused to acknowledge evidence submitted by Plaintiffs at the

hearing; (iv) the Hearing Panel's decision suggests that the Hearing Panel misconstrued or

disregarded evidence that supported Plaintiffs' innocence of the charges, (v) the hearing was run

with the formality of a courtroom despite the fact that Plaintiffs are not lawyers, (vi) no minutes

were kept or recording was taken at the hearing, (vii) an email chain that included Defendant

Jones shows that one of the members of Defendant Spence's political slate pushed to get a

Hearing Panel sat following news that a new union election might need to be called, implying

that this member wanted to get Plaintiffs out of the way by the next election to benefit the

political slate, (viii) the Executive Board received materials from Defendant Jones while Plaintiffs' appeal was pending, but refused to allow Plaintiffs to submit their own written arguments, and (ix) there is an impression of impropriety and bias in the fact that PEF Counsel Lisa King both advised the Hearing Panel and acted as a fact witness.  (*Id.* at 15-18.)

Second, Plaintiffs argue that their other claims related to LMRDA and contract law are supported by the evidence.  (*Id.* at 19, 24-26.)  More specifically, Plaintiffs argue as follows: (a) under the PEF Code of Ethics, the Hearing Panel hears only cases in which the Ethics Committee sustains a charge that is more than a technical or minor violation and there was no mechanism for sending a case from the Executive Board to a Hearing Panel, and therefore it was a violation of the PEF Code of Ethics and the PEF Constitution for the Executive Board to refer the matter to a Hearing Panel on a simple majority vote rather than deciding the charges itself; (b) Defendant Morgenstern violated the rules of procedure by improperly amending a motion seeking that the charges be sent "back to the Hearing Panel" to a motion that the charges be sent "to a Hearing Panel"; (c) the Hearing Panel violated the Code of Ethics by failing to complete its report within 30 days of April 14, 2016 (the last hearing date at which Plaintiffs were present); (d) Defendant Jones' ethics grievance was untimely under the PEF Code of Ethics because he filed it more than 60 days after he discovered the charged violation; and (e) Defendant Jones did not have standing to pursue his appeal once he was hired as a PEF employee.  (*Id.*)

Third, Plaintiffs argue that Defendants violated the LMRDA by retaliating against them for attempting to uphold the requirements of the LMRDA.  (*Id.* at 20-24.)  More specifically, Plaintiffs argue as follows: (a) they were disciplined for upholding their legal duty as union officers to ensure that the process against Ms. Lee complied with the LMRDA and for following

the procedures in the PEF Constitution and PEF Code of Ethics; (b) Defendants' actions were

motivated by a desire to retaliate against Plaintiffs for their protected activity and to quash the

voices of political opponents; (c) imposing restrictions on Plaintiffs Kent and Garcia that keep

them from running for office or having a voice in PEF policy is a form of intimidation of the

membership; and (d) Defendant Spence's actions after his election (and after the discipline on

Plaintiffs) substantiates a finding that there was a pattern of harassment directed at individuals

who had differing or contrary opinions or political views to those of Defendant Spence. (*Id.* at

20-24.)

### 3.    Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants make four arguments. (Dkt. No. 83, at 4-12 [Defs.'

Reply Mem. of Law].) First, Defendants argue that Plaintiffs received the due process required

by the LMRDA. (*Id.* at 4-9.) More specifically, Defendants argue as follows: (a) Plaintiffs

received specific written charges that gave them notice of the facts alleged and allowed them to

prepare a defense; (b) Plaintiffs had reasonable time to prepare their defense even if the LMRDA

applied to the Executive Board's hearing on Defendant Jones' appeal (which, as discussed

previously, Defendants argue it did not); and (c) Plaintiffs received a fair hearing because (i) the

Hearing Panel's decision is supported by some evidence, whether or not Plaintiffs believe the

Hearing Panel should have weighed the evidence a different way, (ii) Plaintiffs' arguments about

bias are speculative and unsupported by evidence, (iii) the Hearing Panel's exercise of its

discretion to determine what procedures to follow does not show bias and did not prejudice

Plaintiffs, and (iv) the LMRDA does not apply to the Executive Board's review of Plaintiffs'

appeal from the Hearing Panel's decision because that review merely upheld discipline and did

not impose discipline.  (*Id.* at 4-8.)

Second, Defendants argue that Plaintiffs' other LMRDA and contract claims are unsupported for the reasons discussed in its memorandum of law-in-chief.  (*Id.* at 8-9.) Defendants further argue that Plaintiffs' disagreement with PEF's reasonable interpretation of its own rules does not amount to a violation for which the Court can provide a remedy.  (*Id.* at 12.)

Third, Defendants argue that Plaintiffs have not established their retaliation claim.  (*Id.* at 9-11.)  More specifically, Defendants argue as follows: (a) Plaintiffs were disciplined for the performance of their roles as union officers, and actions as officers are not protected by the LMRDA; (b) the fact that they assert they were acting based on their interpretation of the LMRDA does not transform their actions into protected speech; and (c) Plaintiffs cannot rely on actions by Defendant Spence that occurred against others after the Hearing Panel's decision to support the existence of a pattern of harassment against Plaintiffs that was intended to suppress the voices of members.  (*Id.*)

Fourth, Defendants argue that Plaintiffs' citation to Section 301 of the Labor Management Relations Act ("LMRA") related to their breach-of-contract claims must be rejected because (a) Section 301 does not extend to contracts between members and their locals, (b) Section 301 allows for the recovery of only equitable relief against individuals, not monetary damages, (c) Plaintiffs did not invoke Section 301 in their Complaint and have not amended the Complaint to include any such claim, and (d) allowing Plaintiffs to argue that PEF was not a local (and that Section 301 therefore applies) would require further discovery despite the fact that discovery is now closed in this matter.  (*Id.* at 11.)

### 4.    Plaintiffs' Sur-Reply Affidavits

Plaintiffs requested and received permission to file sur-reply affidavits related to factual matters that occurred at the 2017 PEF Convention and that were raised for the first time in Defendants' reply memorandum of law. (Dkt. Nos. 85, 86, 87.) In these affidavits, Plaintiffs Kent and Garcia detail their experiences at the 2017 Convention including the fact that (a) they were told they could not have a table or signs or distribute flyers to delegates and then the police were called when they asserted their right to do so, (b) they were told they could not register as guests, (c) they were denied reconsideration of the decision to disallow them to be delegates and there was a public reading of the reasons for that decision in front of members, (d) Defendant Morgenstern made a presentation that implied Plaintiffs Kent and Garcia's administration was unethical and deceitful, (e) Defendants scheduled Plaintiff Kent's Past-President speech at an unusual time during which attendance was sure to be low, and (f) Plaintiff Garcia was verbally and physically attacked by an Executive Board member who is a political ally of Defendant Spence, and neither Defendant Spence nor any other PEF official did anything about it. (Dkt. Nos. 88, 89.) The Court notes that these affidavits deal with matters that occurred after the discipline giving rise to the claims in Plaintiffs' Complaint.

## II.    LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[5]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[6]

Of course, when a non-movant willfully fails to respond to a motion for summary

---

[4]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[5]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[6]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[7]–even where the non-movant was proceeding *pro se*.[8]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[9] Stated another way, when a non-movant fails to oppose a legal argument

---

[7]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[8]     *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

[9]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's

asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.   ANALYSIS

### A.   Whether Defendants Are Entitled to Summary Judgment on Plaintiffs' LMRDA Fair Hearing Claim

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 77, at 12-18 [Defs.' Mem. of Law]; Dkt. No. 83, at 4-9 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Section 411(a)(5) of Title 29 of the United States Code states that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing."  29 U.S.C. § 411(a)(5).  Thus, "[t]he LMRDA entitles the plaintiff to due notice of the charges against him, the production of some evidence at the hearing to support the charges, that the charges be supported by some evidence, an opportunity to

---

failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

confront and rebut the evidence, and an unbiased tribunal." *Chevalier v. Civil Serv. Emps. Ass'n, Inc.*, 10-CV-0446, 2011 WL 1298739, at *8 (N.D.N.Y. Mar. 31, 2011) (Scullin, J.) (citing *Vars v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers*, 320 F.2d 576, 578 [2d Cir. 1963]); *see also Bernstein v. Nolan*, 90-CV-3213, 1990 WL 91728, at *12 (S.D.N.Y. June 28, 1990) ("The elements of . . . a fair hearing . . . generally encompass full notice and a reasonable opportunity to be heard–including the right to present evidence and the right to confront and cross-examine witnesses.").

The Court notes that 29 U.S.C. § 411(b)(5) was "not intended by Congress to constitute an invitation to the courts to intervene at will in the affairs of unions," but merely to "guard[] against abusive and unjust exercises of union authority by prohibiting a union from disciplining a member without first affording him certain procedural safeguards against unwarranted or inaccurate adjudication"; thus, "courts are not to intrude upon internal union disciplinary actions except to uphold these minimum standards." *Georgopoulos*, 942 F. Supp. at 894-95 (quoting *Rosario v. Amalgamated Ladies' Garment Cutters Union*, 605 F.2d 1228, 1238 [2d Cir. 1979]; *Gurton v. Arons*, 339 F.2d 371, 375 [2d Cir. 1964]).

As an initial matter, it is well established that "[29 U.S.C. § 411(a)(5)]'s procedural protections apply only to disciplinary actions that affect 'membership rights' such as the right to nominate candidates for office, to vote in union elections, to attend membership meetings, and to express views and opinions on union business." *United States v. Int'l Bhd. Teamsters*, 156 F.3d 354, 361 (2d Cir. 1998). In this case, the discipline imposed on Plaintiffs Johnson and Kellman as a result of the Hearing Board's decision consisted of (1) a requirement to conform their conduct to the PEF Constitution and PEF Code of Ethics and (2) the issuance of a letter of

reprimand. (Dkt. No. 25, Attach. 6, at 20.) Plaintiffs have not provided any evidence to establish that either of these actions affected any membership rights. As a result, Plaintiffs Johnson and Kellman do not have a basis for maintaining a fair-hearing suit under the LMRDA.

On the other hand, the Hearing Board's report clearly shows that the discipline imposed on Plaintiffs Kent and Garcia affected their membership rights by barring them from running for any union office, serving on any committee, voting in union elections, participating in the union's internal candidate support process, and representing any member or jurisdiction at the annual convention for a period of four and five years, respectively. (Dkt. No. 25, Attach. 6, at 20-21.) The Court must therefore assess whether Plaintiffs Kent and Garcia were afforded sufficient process under the LMRDA.

### 1.    Written Specific Charge

To meet the specificity requirement, the written charge "must be 'specific enough to inform the accused member of the offense that he has allegedly committed,'" must be supported by the presentation of a factual basis (i.e., the facts underlying the specific incident giving rise to the charged violation) rather than a mere citation to the union constitution, and must "provide the accused with 'the information needed to conduct a meaningful investigation and prepare a defense.'" *Kuehne v. Local No. 1, United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe Fitting Indus.*, 09-CV-1974, 2012 WL 13102327, at *4-5 (E.D.N.Y. Feb. 15, 2012) (quoting *Int'l Bhd. of Boilermakers, Iron Shipbuilders, Forgers, and Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 245 [1971]; *Gleason v. Chain Service Restaurant*, 422 F.2d 342, 343 [2d Cir. 1970]). Therefore, presentation of (a) the nature of the charges and (b) a statement of the factual basis underlying the charges is sufficient to meet the requirement for a specific written

charge. *See United States v. Int'l Bhd. of Teamsters*, 931 F. Supp. 1074, 1110-11 (S.D.N.Y. 1996) (finding that including exhibits detailing the evidence and background information relied upon by the Chief Investigator bringing the charges was not only sufficient, but surpassed, the requirement under the LMRDA).

In the charge submitted on February 3, 2015, by Defendant Jones against Plaintiffs, the following violations of the PEF Constitution and the PEF Code of Ethics are alleged: (1) failing to adhere to the constitutional requirement to strengthen and safeguard the union by every means so that it may carry out its purposes, objectives, and obligations; (2) failing to adhere to the constitutional requirement for union officials to act only in the best interests of the union and its members; (3) failing to adhere to the constitutional requirement to conduct all their PEF activities with honesty and integrity; (4) failing to adhere to the Code of Ethics requirement that all members must conduct themselves in a manner conducive to fairness and fair play working only for the good and welfare of the membership; (5) failing to adhere to the Code of Ethics requirement against elected officials engaging in corrupt or unethical practices by taking money, books, records, or other property belonging to PEF, including the unauthorized destruction, alteration, or mutilation of records, vouchers, or receipts; (6) failing to adhere to the Code of Ethics requirement that no officer or member shall abridge PEF's rules and procedures or violate an oath of office; and (7) failing to adhere to the Code of Ethics requirement that no member or officer engage in corrupt practices or racketeering. (Dkt. No. 25, Attach. 1, at 2 [Jones Charge].) Defendant Jones also included a statement of facts discussing the leadership of Division 235 during the relevant time, the concerns raised by the Division Treasurer about Ms. Lee's use of Division 235's PEF Purchase Card, the times and places where those concerns (and similar

concerns by others within Division 235) were raised specifically to Plaintiffs Kent and Garcia, Plaintiff Garcia's alleged refusal to perform an audit of Division 235 and his decision to have the Division conduct its annual internal audit first, Defendants Kent and Garcia's failure to respond to letters sent by the Division requesting an audit and seeking guidance on how to handle their concerns about the Division's finances, an indication that Defendant Johnson had also told members of the Division that the annual audit had to be completed before he could assess the Division's financial books, the results of the investigation by the Division Audit Committee that revealed Ms. Lee had misappropriated Division funds and that those expenditures had been approved by the PEF Central Office despite the fact they were not typical expenses and were not supported by meeting minutes, budgets, audits, receipts, or any review of substantiating evidence, the Division's choice to file ethics complaints against Ms. Lee based on its findings, the outcome of those ethics complaints, and Plaintiff Garcia's releasing of an audit while the ethics complaints against Ms. Lee were pending that found a significantly lower amount of misappropriated charges than had been found by the Division's own audit. (*Id.* at 2-7.)

Plaintiff argues that the charge lacks specificity because (a) it does not identify which charges apply to each individual Plaintiff, and (b) "the discipline set forth charges that were not set forth in the original grievance." (Dkt. No. 81, at 11-13 [Pls.' Opp'n Mem. of Law].) As to Plaintiffs' argument related to the failure to specify which charges applied to which Plaintiff, the Court finds that there is nothing in the applicable law that would require that degree of specificity. Rather, as discussed above, the standard is whether the charge provides sufficient notice to enable the respondent to conduct a defense, and the factual information provided along with the charges (which included statements about the conduct that Plaintiffs allegedly each

engaged in) is sufficient to allow a reasonable person to determine what conduct they are alleged to have engaged in and thus which charges would be reasonably likely to apply to them. Notably, Plaintiffs cite no legal authority for their argument that failure to separate out the charges to specific individuals inherently results in a lack of notice, notwithstanding the other factual evidence provided.

Plaintiffs argue in particular that Plaintiff Kellman is never mentioned by name in the ethics grievance other than as a respondent, and thus it is not clear what the basis is for Defendant Jones' charge against her. (Dkt. No. 81, at 12 n.2 [Pls.' Opp'n Mem. of Law].) Although the Court has already found that Plaintiff Kellman does not have a valid claim under the LMRDA based on Plaintiffs' failure to show that her membership rights were affected by the Hearing Panel's imposition of discipline, the Court alternatively finds that Plaintiffs' argument that there was insufficient notice of the charges against Plaintiff Kellman is without merit. The Court acknowledges that Plaintiffs are correct that Plaintiff Kellman is not mentioned by name. However, Plaintiff Kellman is alluded to indirectly through statements that the "Trustees" eventually performed an audit that was withheld from Division council leaders at Division 235, that, in performing this audit, the Trustees never visited the Division to look at their books or to inquire about the expenditures reported in the ledger, and that Plaintiff Garcia later released that audit, which found far less impropriety than found by the Division's internal audit. (Dkt. No. 25, Attach. 1, at 7, 10, 17.) An attached letter from Plaintiff Garcia states that the "Trustees" had looked at the Division's internal audit and provided him a report in late April, the findings of which had been shared with Ms. Lee. (Dkt. No. 25, Attach. 1, at 13.) The PEF Constitution states that there are only three Trustees for PEF, and all three were named in Defendant Jones'

ethics grievance. (Dkt. No. 24, Attach. 2, at 11.) Consequently, in making statements about the involvement of the "Trustees," Defendant Jones was implicitly alluding to Plaintiff Kellman (as well as to Plaintiff Johnson and Ron Brown). The Court therefore finds that Defendant Jones' ethics grievance provided sufficient notice to Plaintiff Kellman (and Plaintiff Johnson), contrary to Plaintiffs' argument.

As to Plaintiffs' argument that the "discipline" included charges that were not set forth in Defendant Jones' grievance, the Court notes as an initial matter that Plaintiffs do not identify in their opposition memorandum of law the additional charges to which they are referring. (Dkt. No. 81, at 12 [Pls.' Opp'n Mem. of Law].) The Hearing Panel's decision expressly concluded that Plaintiffs violated certain sections of the PEF Constitution and the PEF Code of Ethics, all of which were specifically set forth in Defendant Jones' grievance. (*Compare* Dkt. No. 25, Attach. 6, at 19-20 *with* Dkt. No. 25, Attach. 1, at 2.) However, Plaintiffs alleged in the Complaint that the Hearing Panel found that Plaintiffs Kellman and Johnson violated (in addition to the charged sections of the PEF Constitution and the PEF Code of Ethics) Article VIII of the PEF Constitution and the "duty of care" relevant to officers in nonprofit organizations. (Dkt. No. 1, at ¶¶ 153-54 [Pls.' Compl.].) Again, having already found that Plaintiffs Kellman and Johnson do not have a valid LMRDA claim, the Court alternatively finds that Plaintiffs' argument that they were found guilty of conduct that had not been charged in the ethics grievance is without merit. The Court acknowledges that the Hearing Panel discussed these additional provisions and duties and found that "the Trustees failed to fulfill their oath of office and perform their constitutional duties when they chose not to report the above situation to the membership for almost a full year after becoming aware." (Dkt. No. 25, Attach. 6, at 18-19.) However, it is not apparent that the

Hearing Panel based its discipline on any provision that was not charged in Defendant Jones'

ethics grievance. Rather, the Hearing Panel stated that it "deliberated and voted unanimously to

sustain the charges against . . . Johns[]on [and] Kellman" specifically as to Article II, Section H

and Article XXII, Section K of the PEF Constitution, and Rules 5 and 11 of the PEF Code of

Ethics, all of which were charged in Defendant Jones' ethics grievance. (*Id*. at 19-20.) The

Court notes in particular that the identified failure to report to the membership falls within

Article II, Section H of the PEF Constitution (proscribing the failure to strengthen and safeguard

the union by every means so that it may carry out its purposes, objectives, and obligations), Rule

5 of the PEF Code of Ethics (proscribing the "failure to conduct [oneself] in a manner that is

conducive to fairness and fair play working only for the good and welfare of the membership"),

and Rule 11 of the PEF Code of Ethics (proscribing the violation of an oath of office).

Considering the Hearing Panel's decision as a whole, the Court finds that no reasonable

factfinder could conclude that Plaintiffs Johnson and Kellman were found guilty of charges that

were not raised in Defendant Jones' ethics grievance.

For all of the above reasons, the Court concludes that there is no genuine dispute of

material fact as to whether Plaintiffs were presented with a written specific charge as required by

the LMRDA; they were.

### 2. Reasonable Time to Prepare a Defense

In arguing that they were not afforded a reasonable time to prepare their defense,

Plaintiffs focus on the time period before the hearing at which the Executive Board heard

Defendant Jones' appeal as the relevant time period, arguing that they had between only

November 13, 2015 (when they were informed that Defendant Jones had standing to pursue his

appeal of his ethics grievance) and December 3, 2015, when the hearing on Defendant Jones' appeal was held. (Dkt. No. 81, at 13-15 [Pls.' Opp'n Mem. of Law].)

However, in responding to Defendants' arguments, Plaintiffs have failed to acknowledge or respond to Defendants' primary argument that the LMRDA does not apply to the Executive Board's appeal hearing because the LMRDA applies only to hearings imposing discipline and the hearing in question was merely to assess whether Defendant Jones' appeal of the dismissal of the ethics charges had merit. (Dkt. No. 77, at 15 [Defs.' Mem. of Law].) Because Plaintiffs have not opposed this argument, Defendants need only show that it possesses facial merit. *See Quinn v. United States*, 946 F. Supp. 2d 267, 276-77 (N.D.N.Y. 2013) (Suddaby, J.) ("[W]hen a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a 'modest' burden.").

Defendants' argument is supported by the text of 29 U.S.C. § 411(a)(5), which, as discussed above, states that, in addition to the other requirements of a full and fair haring, a reasonable time to prepare a defense must be provided *before a member is disciplined*. 29 U.S.C. § 411(a)(5) (emphasis added). There is no evidence to suggest that Plaintiffs were disciplined as a result of the Executive Board's hearing and decision of December 3, 2015; rather, it is undisputed that the decision merely resulted in the previous dismissal of the charges by the Ethics Committee being overturned and the reinstated ethics complaint being sent to the Ethics Hearing Panel for decision. It was not until the Hearing Panel's decision of September 2, 2016, that any discipline was imposed on Plaintiffs. (Dkt. No. 25, Attach. 6 [Hearing Panel Report].)

The Court therefore agrees with Defendants that the procedural protections of 29 U.S.C. § 411(a)(5), do not apply to the proceedings before the Executive Board on December 3, 2015, but that those protections do apply to the subsequent proceedings before the Hearing Panel.[10]

It is undisputed that the first of the hearings conducted by the Hearing Panel (related to its decision) occurred on February 17, 2016. (Dkt. No. 25, Attach. 6, at 3 [Hearing Panel Report].) It is therefore also undisputed that Plaintiffs had from December 3, 2015, until February 17, 2016, to prepare its defense before the hearings that resulted in the discipline imposed. The PEF Code of Ethics requires that parties be notified of proceedings before a Hearing Panel "at least 30 days in advance" of those proceedings. (Dkt. No. 24, Attach. 3, at 8.) Given that Plaintiffs had a period of more than two months to prepare, the Court finds that Plaintiffs have not created any genuine dispute of material fact as to whether they were afforded a reasonable time to prepare their defense; they were.

### 3. Full and Fair Hearing

In ensuring a "full and fair hearing," the LMRDA "does not require that union disciplinary hearings incorporate the specific protections associated with judicial proceedings, including the right to be represented by counsel and the technical rules of pleading, procedure, and evidence," and does not require that the member be provided with "the full panoply of procedural safeguards found in criminal proceedings." *Piacente v. Int'l Union of Bricklayers and*

---

[10]     The Court notes that, in making its arguments related to the third factor of the "full and fair hearing" test, Plaintiff relies on improprieties related to the Hearing Panel proceedings and their appeal of the Hearing Panel's decision. (Dkt. No. 81, at 16-18 [Pls.' Opp'n Mem. of Law].) Plaintiffs themselves therefore appear to recognize that it is the Hearing Panel proceedings (not the Executive Board's consideration of Defendant Jones' appeal) that constitutes the basis of their LMRDA fair hearing claim.

*Allied Craftworkers*, 11-CV-1458, 2015 WL 5730095, at *14 (S.D.N.Y. Sept. 30, 2015) (quoting

*Schermerhorn v. Local 100, Transp. Workers Union of Am.*, 93-CV-6686, 1995 WL 677092, at

*5 [S.D.N.Y. Aug. 17, 1995] *aff'd sub nom Schermerhorn v. Local 100, Transp. Workers Union*

*of Am.*, 91 F.3d 316 [2d Cir. 1996]; *United States v. Int'l Bhd. of Teamsters*, 652 F. Supp. 2d

447, 459 [S.D.N.Y. 2009]).  Rather, union disciplinary proceedings "need only adhere to the

'basic principles of due process.'" *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 385 (2d

Cir. 2001).  These include the right to produce evidence, the opportunity to confront and rebut

evidence, and an unbiased tribunal.  *Chevalier*, 2011 WL 1298739, at *8.  In addition to these

procedural protections, the guarantee of a "full and fair hearing" includes a requirement that "the

charging party provide some evidence at the disciplinary hearing to support the charges made."

*Hardeman*, 401 U.S. at 246.  The PEF Code of Ethics states that it will afford an accused with a

full and fair hearing, which includes "the right to question witnesses and examine any evidence

presented by the charging party," the right to have another PEF member represent him or her in

the presentation of his or her defense, and the right to elect to present a defense in writing rather

than appearing personally; it also states that witnesses need not testify under oath.  (Dkt. No. 24,

Attach. 3, at 6.)

As an initial matter, the Court finds that no reasonable factfinder could conclude that the

Hearing Panel's decision was not supported by "some evidence."  The Hearing Panel supported

its findings with a 15-page recitation of testimony and evidence received at the hearing along

with the Hearing Panel's discussion and assessment of that evidence, all of which shows how it

arrived at its conclusions.  (Dkt. No. 25, Attach. 6.)  Although Plaintiffs argue that the Hearing

Panel misconstrued, disregarded, or failed to include certain evidence in its written decision, such

allegations, even if proven true, would not warrant a finding that Plaintiffs were denied the requisite process given that there is still some evidence that supports the Hearing Panel's findings. Plaintiffs' argument on this point essentially amounts to a request for this Court to reweigh the evidence before the Hearing Panel or to substitute its own judgment for that of the Hearing Panel, something that is beyond the scope of the Court's review. *See Georgopoulos*, 942 F. Supp. at 894-95 (noting that courts are only permitted to "'guard against abusive and unjust exercises of union authority by prohibiting a union from disciplining a member without first affording him certain procedural safeguards against unwarranted or inaccurate adjudication,'" but they "are not to intrude upon internal union disciplinary actions except to uphold these minimum standards"); *United States v. Int'l Bhd. of Teamsters*, 22 F. Supp. 2d 135, 143 (S.D.N.Y. 1998) ("Courts reviewing internal union disciplinary actions should intervene under section 101[a][5] 'only if there has been a breach of fundamental fairness.'"). Relatedly, Plaintiffs have not provided any evidence to support their argument that the Hearing Panel refused to accept or acknowledge evidence or testimony that they presented at the hearing. To the contrary, Plaintiff Kent's affidavit states that, although the Hearing Panel "initially refused to accept any written supporting documentation that the Plaintiffs then wanted to introduce, . . . [o]ur evidence was made available to the hearing panel members as it was sent to the PEF Executive Board and they are all members of the Board. Many pieces of our supporting documentation package showed up in Defendant Jones' supporting packet." (Dkt. No. 21, at ¶ 100 [Kent Aff.].) Plaintiffs therefore have not created a genuine dispute of material fact as to whether they were given the opportunity to present a sufficient defense at the hearing; they were.

As to Plaintiffs' argument that they did not receive a "full and fair hearing" because

Defendant Jones presented evidence at the hearing that had not been shared with Plaintiffs prior to the hearing, at least one court in this Circuit has found that "charged parties have no right under Section 101(a)(5) to pre-hearing discovery of documents or other evidence 'material to the proof of the allegations against them.'" *Piacente*, 2015 WL 5730095, at *15 (quoting *Georgopoulos*, 942 F. Supp. at 897). The Court can find nothing in the PEF Code of Ethics that indicates either that (a) the ethics complaint itself must contain all of the evidence and information to support the charges and that no further evidence may be submitted to the Hearing Panel, or that (b) the parties are required to exchange all relevant information before the Hearing Panel proceedings. Nor have Plaintiffs pointed to any legal authority recognizing the proposition that basic due process requires that, before the hearing, they be provided with all of the evidence that Defendant Jones intended to present at the hearing. The PEF Code of Ethics states that "[a] full and fair hearing will be conducted [by the Hearing Panel], with the accused afforded the right to question witnesses and examine any evidence presented by the charging party." (Dkt. No. 24, Attach. 3, at 6.) The Code of Ethics therefore indicates a right to examine evidence presented by Defendant Jones during the hearing, not before. The Court therefore finds that Plaintiffs have not shown a deprivation of their right to a full and fair hearing as the result of any failure to provide them with all the evidence against them before the hearing.

As to Plaintiffs' argument that the hearing was unfair based on the level of the formality of the procedures (in Plaintiffs' words, that it was "run like a courtroom") because some members of the Hearing Panel and Defendant Jones were attorneys, while Plaintiffs were not, Plaintiffs offer no indication of how following certain court-like formalities rendered their hearing unfair. (Dkt. No. 81, at 16 [Pls.' Opp'n Mem. of Law].) The only elaboration on this

point is found in the deposition testimony of Plaintiff Garcia, in which he testified that the formality affected "the way we were to respond to questions," that there was the use of "legal jargon," that it felt like it was being run differently than the "many administrative hearings that I've been in in a PEF environment," and that the process for objections was different than in administrative proceedings. (Dkt. No. 79, Attach. 1, at 12-13 [Garcia Dep.].) Although this testimony shows that the Hearing Panel used somewhat different procedures (none of which appear to violate the Rules for Procedure contained in the PEF Code of Ethics) than ordinarily followed in a hearing of this nature, nothing in this vague description reasonably establishes that those procedural deviations rendered the proceedings unfair to Plaintiffs so as to deprive them of their rights under the LMRDA. Additionally, it is undisputed that Plaintiffs had the right to be represented by another PEF member, and the evidence establishes that they were aware of that right, but chose not to take advantage of it. (Dkt. No. 75, Attach. 1, at 86-87 [Kent Dep.]; Dkt. No. 75, Attach. 2, at 52-53 [Garcia Dep.]; Dkt. No. 75, Attach. 3, at 20 [Kellman Dep.].) Plaintiffs therefore have not shown that they were denied their right to a full and fair hearing in this respect.

As to Plaintiffs' arguments regarding the absence of minutes or a recording of the hearing, Plaintiffs offer no evidence that minutes or recordings were routinely (if ever) made in proceedings before a PEF Hearing Panel. At his deposition, Plaintiff Garcia testified that there were things about "the hearing panel process that I would like to see changed. For example, there are no minutes. There's no transcript of what transpired within that process, so it's like a secret panel. There are changes that could be made to the hearing process." (Dkt. No. 79, Attach. 1, 13-14 [Garcia Dep.].) This evidence implies that *no* Hearing Panel proceedings

included the making of any record, which means that the failure to make such a record during Plaintiffs' hearing was not a departure from the way in which the PEF conducted these hearings generally. Indeed, nothing in either the PEF Constitution or the PEF Code of Ethics indicates that Hearing Panel proceedings must be recorded in any manner. Nor have Plaintiffs provided any evidence that they requested to record the hearings but were denied the ability to do so. Additionally, once again, Plaintiffs have failed to cite any legal authority to support their argument that making a record of a hearing is a requirement for receiving a "full and fair hearing," or that the absence of a record in this case rendered the proceedings unfair.

Most substantially, Plaintiffs argue that the Hearing Panel was biased against them, which resulted in the denial of a full and fair hearing. As to Plaintiffs' argument that the Hearing Panel was biased because it was comprised of members who belonged to, or supported, Defendant Spence's political slate, the Court notes that "courts have been reluctant to rule that personal bias or political enmity alone renders a hearing unfair." *Rowan v. Laborers Int'l Union of N. America*, 10-CV-3855, 2012 WL 3203046, at *15 (E.D.N.Y. Aug. 3, 2012) (quoting *Perry v. Int'l Longshoremen's Ass'n, AFL-CIO*, 638 F. Supp. 1441 [S.D.N.Y. 1986]). Thus, while there appears to be some evidence that some of the members of the Hearing Panel were all members of Defendant Spence's political slate, or at least supported Defendant Spence's administration, such fact alone does not suffice to establish that they were biased against Plaintiffs. (Dkt. No. 75, Attach. 1, at 60 [Kent Dep., stating that she was not aware if Mr. Davis was affiliated with any particular caucus]; Dkt. No. 75, Attach. 2, at 43, 46-48 [Garcia Dep., stating that he did not know if Mr. Davis, Ms. DiAntonio, or Mr. Osta were members of any caucus but he did know that they were supporters of the Spence Administration, and that he believed that Ms. Lefler and Ms.

Jaulus were members of Defendant Spence's political slate at the time].)  Similarly, Plaintiffs' various evidence that they had past disagreements with, negative interactions with, and/or a history of differing political views with some members of the Hearing Panel does not alone suffice to establish that those members were biased against Plaintiffs.  (Dkt. No. 75, Attach. 1, at 71-84 [Kent Dep.]; Dkt. No. 75, Attach. 2, at 43-49 [Garcia Dep.].)

Plaintiffs also point to an email chain involving Defendant Spence, Defendant Jones, and PEF members Nikki Brate, Adreina Adams, Kevin Hintz, and Peter Banks, in which Mr. Banks responded to Defendant Spence's email stating that they would likely be facing an election in a few months due to an unfavorable decision by the Department of Labor by stating that "[w]e need to start planning now. . . . [First,] [g]et Susan's Hearing Panel to sit ASAP."  (Dkt. No. 79, Attach. 6, at 6.)  Plaintiff argues that this email chain (and Defendant Jones' involvement in it) insinuates that Defendant Spence and Defendant Jones influenced the Hearing Panel's decision.  (Dkt. No. 81, at 16-17 [Pls.' Opp'n Mem. of Law].)  This, again, is mere speculation for five reasons.  First, Mr. Banks (the only member of the email chain to make any such remotely inculpatory statement) is not a defendant in this action, nor was he a member of the Hearing Panel.  Second, the fact that Defendant Jones (as the individual who brought the charges against Plaintiffs) was involved in the email chain does not establish any bias by the Hearing Panel given that Plaintiffs have offered no evidence that the Hearing Panel members were friendly with Defendant Jones or that Defendant Jones held any sway over the Hearing Panel members.  Third, Defendant Spence never responded to Mr. Banks' statement about needing to convene a Hearing Panel as soon as possible or to any of the other discussion occurring in the email chain; and thus the email chain provides no evidence that Defendant Spence intended to choose a biased panel or

otherwise use the Hearing Panel against Plaintiffs in a biased manner. Fourth, Plaintiffs' citation to the statement by Ms. Brate that "we can not have any idea what the outcome will be," relies on Plaintiffs' strained interpretation taken out of context from the rest of Ms. Brate's email. (Dkt. No. 79, Attach. 6, at 5; Dkt. No. 81, at 17 [Pls.' Opp'n Mem. of Law].) Fifth, Plaintiffs appear to argue that it was this email chain that spurred the impanelment of the Hearing Panel, yet Plaintiffs ignore the fact that the Executive Board decision to send the ethics grievance to a Hearing Panel was issued on December 3, 2015, the email chain was started on December 9, 2015 (just six days later), and the Hearing Panel did not hold its first hearing until February 17, 2016. (Dkt. No. 25, Attach. 6, at 3; Dkt. No. 79, Attach. 6, at 6.) Plaintiff offers no evidence that this time line somehow indicated an extraordinary rush to bring them before the Hearing Panel, much less that getting the matter to the Hearing Panel quickly somehow shows that the participants of the email chain had control over the outcome of the Hearing Panel's decision. Plaintiff also has not pointed to any evidence indicating precisely when the members of the Hearing Panel were chosen in advance of the April hearing, i.e., whether it was soon after the email chain or later. For all of these reasons, the Court finds that no reasonable factfinder could interpret this email exchange as showing that the Hearing Panel was biased against Plaintiffs.

Plaintiffs also argue that the Hearing Panel was biased because they were all members of the Executive Board that voted to overturn the Ethics Committee's dismissal of Defendant Jones' ethics grievance. (Dkt. No. 81, at 16 [Pls.' Opp'n Mem. of Law].) The situation here differs from those cited by Plaintiffs or those found to be indicative of bias by other courts in that Plaintiffs have offered no evidence that the members of the Hearing Panel had prejudged Plaintiffs' guilt. *See Monaco v. Smith*, 00-CV-5845, 2004 WL 203009, at *6 (S.D.N.Y. Feb. 2,

2004) (finding an issue of material fact as to bias where three of the members of the hearing panel had voted to terminate the plaintiff's employment position based upon the same charges they later decided as the hearing panel and there was evidence that one of those members told other officers and union members that plaintiff was guilty before the hearing took place); *Perry*, 638 F. Supp. at 1449 (finding impermissible bias where there was evidence that at least three members of the Executive Council had written statements about their belief that the plaintiff was guilty, and the two individuals who brought the charges against the plaintiff set out their belief in the plaintiff's guilt before the disciplinary committee was convened). In this case, Plaintiffs have offered no such evidence that any of the members of the Hearing Panel prejudged their guilt as to the charges. The fact that the Hearing Panel members had all been members of the Executive Board who voted to overturn the Ethics Committee's dismissal of the charges does not by itself reasonably establish bias or prejudgment, because the Executive Committee merely decided whether the charges merited further investigation; there is no indication that they made any finding as to the merits of the charges against Plaintiffs, and it is undisputed that new evidence not available to either the Ethics Committee or the Executive Board was presented to the Hearing Panel. Additionally, Plaintiff has offered no evidence that the members of the Hearing Panel specifically voted to overturn that dismissal as part of that Executive Board. The Court notes that it is hardly remarkable that the members of the Hearing Panel were all members of the Executive Board, given that the PEF Code of Ethics specifically requires that "[t]he members of the Hearing Panel shall be members of the Executive Board." (Dkt. No. 24, Attach. 3, at 6.) Without any evidence to support their arguments, Plaintiffs' assertion that the members of the Hearing Panel were biased against them is speculation, and speculation is insufficient to sustain

their burden on a motion for summary judgment.

In addition to their arguments about the unfairness of the Hearing Panel's proceedings, Plaintiffs also argue that they faced unfairness in the way their appeal of the Hearing Panel's decision was conducted because (a) the members of the Hearing Panel voted on the Executive Board's denial of Plaintiffs' appeal, and (b) Defendant Jones and his supporters used the PEF email system to "garner support against Plaintiffs at the upcoming appeal," while Plaintiffs' request to have their summary of written arguments disseminated to the PEF Executive Board in advance of that appeal was denied. (Dkt. No. 81, at 17-18 [Pls.' Opp'n Mem. of Law].) As an initial matter, the Court disagrees with Defendants' contention that the LMRDA's "full and fair hearing guarantee" cannot extend to appeals. In particular, the PEF Code of Ethics states that "[j]udgments of the Hearing Panel are final *unless an aggrieved party appeals the decision* to the Executive Board." (Dkt. No. 24, Attach. 3, at 7 [emphasis added].) This indicates that a Hearing Panel decision imposing discipline (such as the one in this case) is not final during the pendency of any appeal. Therefore, because such discipline is not final until the Executive Board affirms it, it is logical to conclude that the LMRDA would require the appeal proceedings to also be unbiased.

As to the Hearing Panel's involvement, the PEF Code of Ethics states only that, during a proceeding before the Executive Board on a grievance (which includes appeals from a Hearing Panel decision), "[b]oard members party to the grievance will not be allowed to vote." (Dkt. No. 24, Attach. 3, at 5.) To the extent that Plaintiffs intended to argue that the members of the Hearing Panel became "party to the grievance" based on their role on the Hearing Panel, the Court finds that argument unpersuasive. *See United States v. Int'l Bhd. of Teamsters*, 88-CV-

4486, 2008 WL 2743695, at *8 (S.D.N.Y. July 14, 2008) (noting that the union constitution prohibited persons who were "involved" from hearing a charge, and finding that the three hearing panel members participating in the executive board's deliberation on the charges were not "involved" merely because they had conducted the evidentiary hearing against him), *aff'd* 341 F. App'x 728 (2d Cir. 2009). As the Court has already noted, the PEF Code of Ethics requires the Hearing Panel to be made from members of the Executive Board. It is undisputed that the Executive Board voted to uphold the Hearing Panel's decision by a vote of 58 to 51; given that there were only five members of the Hearing Panel, the Executive Board still would have rendered a majority vote in favor of upholding the Hearing Panel's decision even if the members of the Hearing Panel had not voted. Plaintiffs therefore have not offered evidence from which a reasonable factfinder could conclude that allowing the Hearing Panel members to vote as part of the Executive Board on their appeal made their appeal unfair.

As to Plaintiffs' argument that Defendant Jones had the opportunity to present arguments to the Executive Board prior to the hearing of their appeal while Plaintiffs' efforts to submit written arguments were rejected, the Court notes that it is undisputed that Plaintiffs were permitted to submit any material in support of their appeal to the Executive Board as part of that appeal and that Plaintiffs did in fact present oral arguments to the Executive Board at the hearing. Plaintiffs' argue that Defendant Jones improperly attempted to influence the Executive Board's decision before the hearing, yet they cite no evidence to substantiate that argument other than Plaintiff Kent's affidavit related to Plaintiffs previous motion for preliminary injunction.[11]

_____

[11] The Court notes that, in responding to Defendants' Statement of Undisputed Material Facts, Plaintiff asserts that Defendant Jones sent an email in which he "urged the Executive Board to find the Plaintiffs guilty," including a copy of the Hearing Panel's decision

However, even if Plaintiff Kent's affidavit were sufficient to create a genuine dispute of material fact as to whether Defendant Jones sent certain materials to an unspecified number of Executive Board members, Plaintiffs offer no admissible record evidence regarding why the materials improperly distributed to those members created bias. Plaintiff Kent's affidavit indicates that Defendant Jones did not send these materials to the entire Executive Board, and she offers no evidence as to what number of the more than 100 members of the Executive Board received them. (Dkt. No. 21, at ¶¶ 111-13 [Kent Aff., stating that Defendant Jones sent the email and materials to "members of the E-Board" and he encouraged "widespread distribution to all Executive Board members," as well as that the email and materials were "distributed to the ny-CoUP supporters, which included all Ethics Hearing Panel members"].) In any event, the sending of a copy of the Hearing Panel's decision (whether or not it had the "confidential" watermark) to members of the Executive Board would not have had any effect given that, as Defendants argue, the Executive Board members would inevitably have the Hearing Panel's report when assessing whether to uphold that report. Nor does the fact that Defendant Jones advocated for the Hearing Panel's decision to be upheld reasonably create bias because, because, as the opposing party in the appeal and the member who brought the charges against Plaintiff, he was expected to do so in those positions. The only other document allegedly sent with this email was "a report of an executive session hearing that under PEF policy should have been kept confidential," which Plaintiffs have neither produced as evidence in opposition to this motion or

_____

that was not marked "confidential." (Dkt. No. 78, at ¶ 60 [Pls.' Rule 7.1 Resp.].) However, the only evidence that Plaintiffs cite in support of that contention (a page from Plaintiff Kent's deposition), does not actually appear in the submission provided by Plaintiffs. (Dkt. No. 79, Attach. 2 [Kent Dep., noted as "Exhibit B" to Attorney Sovern's cited Decl.].)

described with any further specificity from which the Court can ascertain that such document could have influenced the decision-making of the Executive Board; Plaintiffs have not even provided sufficient information to determine whether this document was directly related to the charges or the Hearing Panel's determination. (Dkt. No. 21, at ¶ 111 [Kent Aff.].) As a result, the Court cannot conclude that a reasonable factfinder could determine, on the provided evidence, that Defendant Jones' email to some members of the Executive Board created a bias against Plaintiffs that rendered their appeal process unfair.

Plaintiffs also argue that there is "an impression of impropriety and bias" due to Ms. King's dual role in advising the Hearing Panel and serving as a fact witness, citing *Chevalier*, 2011 WL 1298739. (Dkt. No. 81, at 19 [Pls.' Opp'n Mem. of Law].) Ms. King's involvement in this case is distinguishable from that of the union attorney in *Chevalier*. First, *Chevalier* involved findings on whether the allegations that a union attorney advised the hearing board while representing the defendant's sole witness plausibly suggested bias for the purposes of a motion to dismiss. *Chevalier*, 2011 WL 1298739, at *9. Because Plaintiffs are defending against a motion for summary judgment in this action, they (unlike the plaintiff in *Chevalier*) must provide evidence (rather than mere allegations) to support the existence of bias as a result of Ms. King's involvement. Second, in *Chevalier*, the union attorney both advised the hearing board and represented the defendant's sole witness. *Chevalier*, 2011 WL 1298739, at *9. In this case, although Ms. King did provide a written opinion to the Hearing Panel regarding "relevant sections of the Code of Conduct," she appeared as a witness (rather than as a representative for any Defendant or for a witness of Defendant Jones) and Plaintiffs had the opportunity to cross-examine her. Although it is undisputed that Ms. King refused to answer Plaintiffs' questions that

42

involved information covered by attorney-client privilege, it is also undisputed that Plaintiffs, as the client (given that the questions related to Ms. King's advising of Plaintiffs Kent and Garcia related to the issues with Ms. Lee) had the ability to waive that privilege to allow her to answer, but did not do so. (Dkt. No. 79, Attach. 2, at 29.) Plaintiffs also seem to argue that Ms. King's "memo" to the Hearing Panel included evidence in favor of their position. (Dkt. No. 81, at 16 [Pls.' Opp'n Mem. of Law].) Plaintiffs simply have not adduced evidence to create a genuine dispute of material fact as to whether Ms. King's involvement constituted even an impression of bias; it does not.

Lastly, to the extent that Plaintiffs have intended to argue that the number of procedural violations identified in their opposition memorandum of law (which are more appropriately related to Plaintiffs' breach-of-contract claims) rendered the Hearing Panel proceedings unfair or lacking, the Court finds those arguments unpersuasive. "A violation of a procedural provision of a union's constitution is actionable only if the violation deprived the party of a full and fair hearing under the LMRDA." *Int'l Bhd. of Teamsters*, 247 F.3d at 387; *see also Caloumeno v. McGowan*, 668 F. Supp. 332, 326 (S.D.N.Y. 1987) ( "An action may not be brought under the LMRDA merely to enforce a union's internal rules or procedures," but rather a failure by a defendant to follow its internal rules only if the plaintiff "can show that such failure either severely handicapped the preparation and presentation of his defense, or seriously increased the danger of an erroneous determination."). In particular, Plaintiff has not provided any evidence establishing that referring the ethics grievance to the Hearing Panel, hearing the ethics grievance despite the untimely filing of that grievance or Defendant Jones' lack of standing to file such a grievance, or failing to render a decision within 30 days of the Hearing Panel's hearings in any

way handicapped their ability to mount a defense or otherwise deprived them of a full or fair hearing.

For all of the above reasons, the Court finds that Plaintiffs have not adduced evidence from which a reasonable factfinder could conclude that Defendants denied Plaintiffs a full and fair hearing in violation of the LMRDA. Defendants' motion for summary judgment is therefore granted on this claim.

B. **Whether Defendants Are Entitled to Summary Judgment of Plaintiffs' LMRDA Retaliation Claim**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 77, at 22-26 [Defs.' Mem. of Law]; Dkt. No. 83, at 9-11 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

Section 529 of Title 29 of the United States Code states that "[i]t shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter." 29 U.S.C. § 529. Section 411(a)(2) of Title 29 of the United States Code further states that "[e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to

impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." 29 U.S.C. § 411(a)(2).

However, the Second Circuit has indicated that the "LMRDA's rights of association and expression are limited to union members acting as members and not to union officers acting solely in their official capacity as officers." *Schemerhorn*, 91 F.3d at 323; *accord, Johnson v. Kay*, 860 F.2d 529, 536 (2d Cir. 1988). The exception to this rule is "where 'a scheme to suppress dissent' exists among union officials," such that, "as a result of established union history or articulated policy[, there is] a purposeful and deliberate attempt by union officials to suppress dissent within the union." *Schemerhorn*, 91 F.3d at 323; *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir. 1973).[12] To show such a scheme, a plaintiff must present "clear and convincing proof" that his mistreatment "was part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out." *Maddalone v. Local 17, United Bhd. of Carpenters and Joiners of America*, 152 F.3d 178, 184 (2d Cir. 1998). Notably, this exception does not apply to "ad hoc personal retaliation" but only to retaliation that is "part of a calculated and deliberate scheme to discourage dissent." *Maddalone*, 152 F.3d at 185; *see Franza v. Int'l*

---

[12]     The Court notes that the Supreme Court has held that, in elaboration on the general standard discussed above, the LMRDA is applicable to elected union officials who have been removed in retaliation for engaging in protected speech because it thwarts the will of the members who elected that official and increases the chance that member speech in accordance with that official's policies will also be suppressed. *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 355 (1989). However, Plaintiffs admit that they were not removed from their offices; rather, they lost their positions as a result of an election. (Dkt. No. 81, at 22 [Pls.' Opp'n Mem. of Law].) Thus, the rationale underlying the holding in *Lynn* does not apply in this case.

*Bhd. of Teamsters, Local 671*, 869 F.2d 41, 45 (2d Cir. 1989) ("[T]he question is whether an action against an official is merely an isolated act of retaliation for political disloyalty or is instead part of a purposeful and deliberate attempt to suppress dissent within the union."). Although the majority of cases applying this standard involve the removal of an official from their position or employment within the union, the Second Circuit has found that this standard (and the above exception) also applies to cases in which charges for internal rule violations were the applicable retaliatory action. *Schemerhorn*, 91 F.3d at 319-21.

Plaintiffs admit that they "were disciplined as result of allegations stemming from their roles as union officers," and that they are alleging that Defendants actions related to the ethics charges was motivated by Defendants' desire to retaliate against Plaintiffs for actions taken as PEF officers. (Dkt. No. 81, at 21 [Pls.' Opp'n Mem. of Law].) Thus, there appears to be no dispute that Plaintiffs were union officers at the time they engaged in the conduct for which they were disciplined, and that the conduct was taken (or not taken) in their official capacities.[13] As a result, unless there was a "scheme to suppress dissent" resulting in a threat of suppression of member speech as discussed above, the LMRDA does not protect Plaintiffs' alleged speech.

As to such a scheme, Plaintiffs argue that "it is clear from the Record that[,] because Kent and Garcia did not share the Defendants' opinions about how to proceed against another union

---

[13]     Plaintiffs assert (and it does not seem to be disputed) that they were no longer officials at the time of the Hearing Panel's decision and the imposition of discipline. (Dkt. No. 81, at 22 [Pls.' Opp'n Mem. of Law].) However, the "free speech" that they allege they were disciplined for occurred while they were officials acting in their official capacity (i.e., before the election at which Plaintiffs Kent and Garcia were replaced as President and Secretary-Treasurer). The fact that Plaintiffs suffered consequences to their rights as members (in the form of restrictions on Plaintiffs Kent and Garcia's participation in the union and their ability to seek union office) does not render their retaliation claims actionable under the LMRDA. *Schemerhorn*, 91 F.3d at 323.

member, a scheme or organized plain ensued that waged a war against the Plaintiffs in such a way that not only assaulted their personal reputations in public, social media at union locations, but culminated in a biased Hearing Panel decision that ensured that Kent and Garcia would be unable to voice an opinion with any kind of union authority for many years." (Dkt. No. 81, at 23 [Pls.' Opp'n Mem. of Law].)  In other words, Plaintiffs argue that Defendants' scheme to suppress political dissent against their political slate is based on the fact that Defendants (a) filed ethics charges against Plaintiffs, (b) used those ethics charges to Defendants' advantage in the union elections, (c) pursued those ethics charges through the hearing process, using their post-election power to bias those proceedings against Plaintiffs, and (d) used the discipline imposed by the hearing process to prevent Plaintiffs Kent and Garcia from being able to challenge Defendants' leadership.

Plaintiffs do not appear to allege any actions taken against them or their political slate by Defendants at any time before the filing of the ethics charge in February 2015, but instead allege only that Plaintiffs' administration was "being challenged" by Defendant Spence's political slate, which "held different political beliefs . . . on how PEF should be run." (Dkt. No. 1, at ¶¶ 56-58 [Pls.' Compl.].)  Additionally, it is undisputed that Plaintiffs themselves were the "union leadership" from August 2012 (when they were elected) until August 2015 (when Defendant Spence was took over as President of PEF).  Given that Plaintiffs were the union leadership at the time the ethics charges were filed, it would be difficult to reasonably construe those charges as part of a "series of oppressive acts by the union leadership." *Maddalone*, 152 F.3d at 184.  The only post-election actions against Plaintiffs described in the Complaint are (a) Defendant Jones' appeal of the dismissal of his ethics charge by the Ethics Committee, (b) the proceedings before

the Hearing Panel and the imposition of discipline as a result of the Hearing Panel's findings, and (c) the Executive Board's affirmance of the Hearing Panel's decision. Not only did these proceedings flow naturally from the filing of the ethics charge, but two of them took place before the entire Executive Board, which, based on the submitted evidence, consisted of more than 100 individuals; Plaintiffs have not alleged (much less provided admissible evidence showing) that the composition of the Executive Board was such that Defendant Spence's political slate was effectively in control of that Board. Additionally, regardless of Plaintiffs' arguments about the propriety of how their proceedings before the Hearing Panel and the Executive Board were conducted, a single course of disciplinary proceedings on a single set of charges is a far cry from the other examples that courts have found to be schemes to suppress dissent. *See Johnson*, 860 F.2d at 537 (finding that plaintiff had sufficiently pled a history or policy to suppress dissent based on an attempted assault of the plaintiff at a meeting, threats, planned and coordinated disruption of a meeting led by the plaintiff, using methods to prevent the plaintiff's supporters from addressing meetings, and attempts to control both the union newspaper and headquarters); *Cotter v. Owens*, 753 F.2d 223, 226, 230 (2d Cir. 1985) (finding that a scheme to suppress dissent could be reasonably shown where the lawsuit was part of "a long-standing, bitter fight between rival factions" that involved multiple instances of litigation spanning between 1970 and 1980); *Quinn v. Chiofalo*, 03-CV-1312, 2003 WL 22952859, at *1-3, 9-11 (E.D.N.Y. Aug. 26, 2003) (finding that defendants bringing charges against plaintiffs for slander and racism against political opponents, reinstatement of those charges after an appeal of their dismissal, refusal to process one of the plaintiff's charges against defendant, and suspension and removal of one plaintiff from his position on the executive board did not plausibly allege a scheme to suppress

dissent); *Dilacio v. New York City Dist. Council of the United Bhd. of Carpenters & Joiners of America*, 593 F. Supp. 2d 571, 580-83 (S.D.N.Y. 2008) (collecting cases). Plaintiffs have not cited any cases in which conduct similar to that taken against them was found to constitute a scheme to suppress dissent.

As Defendants argue, Plaintiffs' citation to actions by Defendants *after* the actions taken against Plaintiffs does not serve to show the requisite scheme. *See Maddalone*, 152 F.3d at 184 (noting that it has found such claims to exist where the discipline "stemmed from longstanding and well-documents patterns of harassment and intimidation"). However, even if the Court were to take those actions into account, Plaintiffs have offered no evidence that the other persons against whom Defendant Spence took action were affiliated with Plaintiffs, sympathetic to Plaintiffs' actions or views, or otherwise connected with the actions taken against Plaintiffs; rather, they consisted of Defendant Jones (who filed the ethics charges against Plaintiffs) and two members of President Spence's own political slate. (Dkt. No. 81, at 22 [Pls.' Opp'n Mem. of Law, citing evidence].)

Additionally, it is not clear how Defendants' filing of ethics charges against Plaintiffs based on their disagreement with Plaintiffs about what action was needed to protect the union from the effects of fraud (and pursuing those charges through to their conclusion) would threaten the freedom of union members to speak out. *See Cavelli v. New York City Dist. Council of Carpenters*, 816 F. Supp. 2d 153, 169 (E.D.N.Y. 2011) (stating that a finding of a direct threat to the free speech rights of union members is an essential element of a claim of retaliation under the LMRDA due to a scheme to suppress dissent); *Bentivegna v. Fishman*, 02-CV-4028, 2002 WL 1586957, at *14 (S.D.N.Y. July 17, 2002) (finding that threats that appointed staff members

49

could be discharged if they did not "get with the program" did not give rise to a LMRDA retaliation claim because those threats had no bearing on the rights of members to dissent or speak out); *Local 1150 Int'l Bhd. of Teamsters v. SantaMaria*, 162 F. Supp. 2d. 68, 85 (D. Conn. 2001) (finding that, even though plaintiff had alleged a scheme to suppress dissent, he had not stated a claim for retaliation because he had failed to sufficiently allege that there was any effect from that scheme on the rights of members). Although union members certainly have an interest in (and presumably an opinion about) how fraud is handled, it is the officers of the union that are responsible for oversight and handling fraud when it occurs. Notwithstanding any potential political animosity between Defendants and Plaintiffs, the charges against Plaintiffs (and the resulting discipline) were based on their alleged failure to comply with their duties as officers as outlined in the PEF Constitution and the PEF Code of Ethics; because non-officer members do not have the same duties as officers, it seems highly unlikely that the actions taken against Plaintiffs would have caused members who may have shared their views to feel threatened.[14] Plaintiffs have offered no evidence from which a reasonable fact finder could conclude that the actions taken against them would have threatened members' ability to voice their opinions of how fraud cases are handled by the union or how Ms. Lee's case was handled in particular.

Plaintiffs also appear to argue that, notwithstanding any showing of a scheme to suppress dissent, the fact that Plaintiffs Kent and Garcia had restrictions imposed on their eligibility to run

---

[14]     Notably, Plaintiffs attempt to show ongoing retaliation identifies "quelling activities" including investigations into other PEF officers (not "members") and the termination of Defendant Jones, who is, based on the fact that he filed the ethics charges and the other evidence, not a sympathizer of Plaintiffs' position or actions regarding Ms. Lee's conduct; therefore, even if such actions were relevant to the matter at hand, they do not show any effect on the membership in particular.

for union office and participate in the Convention or PEF committees for a period of time is sufficient to show an effort to intimidate membership from advocating so as to merit intervention (regardless of the above-stated general rule as to union officials), relying on *Cotter*, 753 F.2d 223. (Dkt. No. 81, at 22 [Pls.' Opp'n Mem. of Law].) However, in *Cotter*, the Second Circuit did not find that intervention was appropriate on this basis alone; rather, the Second Circuit recognized that such circumstance could fall under the ambit of the LMRDA *if they were part of a broader scheme or pattern* as already discussed. *See Cotter*, 753 F.2d at 229-30 (finding that, although the plaintiff was found to be a policymaking official, further development was required to determine whether his termination and other discipline was part of a pattern or policy of suppressing dissent within the union); *Schonfeld*, 477 F.2d at 903 (finding that allegations that were based solely on an officer's removal from office or his ineligibility to run in an interim election would not have individually been sufficient, but were sufficient when they were coupled with allegations that such actions were brought for the purposes of suppressing opposition and were part of a policy or practice for the previous 20 years). Neither *Cotter* nor *Schonfeld* stands for the proposition that a restriction on an officer's right to seek an office or participate in policymaking functions within a union is alone sufficient to merit the application of the LMRDA without a showing that those restrictions were part of a pattern or policy intended to suppress opposition or dissent.[15]

---

[15]      As part of their retaliation claim, Plaintiffs argue that, based on Second Circuit cases, deeming a member ineligible to seek union office affects their membership rights and permits them to challenge the fairness of the procedures that resulted in that discipline. (Dkt. No. 81, at 24 [Pls.' Opp'n Mem. of Law].) Although Plaintiffs are correct that these cases upheld the right of a member (including union officials) to challenge the fairness of the disciplinary procedures under 29 U.S.C. § 411(a)(5), they do not address whether the LMRDA allows a union official's claim for retaliation under *29 U.S.C. § 411(a)(2)* in similar circumstances. *See Int'l*

For all of the above reasons, the Court finds that Plaintiff has not adduced evidence from which a reasonable factfinder could conclude that Defendants engaged in retaliation against Plaintiffs in violation of the LMRDA. Defendants' motion for summary judgment is therefore granted on this claim.

### C. Whether Defendants Are Entitled to Summary Judgment of Plaintiffs' Breach-of-Contract Claims

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' reply memorandum of law. (Dkt. No. 83, at 12-13 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

In their Complaint, Plaintiffs assert a breach-of-contract claim based on Defendants' alleged violation of Article XIX(A) of the PEF Constitution arising from the Executive Board's handling of Defendant Jones' appeal of the Ethics Committee's dismissal of the ethics charges against Plaintiffs. (Dkt. No. 1, at ¶¶ 223-31 [Pls.' Compl.].) As to this violation, Plaintiffs allege that Article XIX(A) required that the Executive Board comply with Robert's Rules when voting on that appeal, while the Executive Board instead improperly followed voting rules established by the PEF Code of Ethics. (*Id.*) Plaintiffs also asserted a breach-of-contract claim based on Defendants' alleged violations of the PEF Code of Ethics as to the Executive Board's actions in (a) accepting Defendant Jones' ethics grievance despite the fact it was filed after the deadline in the Code of Ethics, (b) accepting Defendant Jones' appeal despite his lack of standing under the

---

*Bhd. of Teamsters*, 156 F.3d at 360-61 (discussing ousted union president's right to challenge decision barring him from seeking re-election through 29 U.S.C. § 411[a][5]). Rather, as already discussed, *Cotter* and *Schonfeld* indicate that the existence of a "scheme," pattern, or policy is required even in such cases. Because the ability to bring a "full and fair hearing" claim under 29 U.S.C. § 411(a)(5) has no bearing on the ability to bring a retaliation claim under 29 U.S.C. § 411(a)(2), Plaintiffs' citations are not relevant to the analysis of their retaliation claim.

Code of Ethics, and (c) referring the reinstated ethics grievance to a Hearing Panel rather than deciding the merits itself, despite the existence of no authority or procedure to do so in the Code of Ethics. (*Id.* at ¶¶ 232-45.) Plaintiffs also generally allege that Defendant Morgenstern improperly amended the language of the motion to refer the reinstated ethics grievance to the Hearing Panel in violation of unspecified procedural rules, and that the Hearing Panel failed to render its decision within 30 days of the end of the hearing in violation of the PEF Code of Ethics. (*Id.* at ¶¶ 125-26, 179.)

Plaintiffs do not specify in their Complaint whether they intend to assert their breach-of-contract claims (based on alleged failures to comply with both the PEF Constitution and the PEF Code of Ethics) pursuant to Section 301 of the LMRA or pursuant to New York law. (Dkt. No. 1, at ¶¶ 223-45 [Pls.' Compl.].) In their opposition memorandum of law, Plaintiffs state that union constitutions are contracts pursuant to "§ 301" and that "individual members may bring suit under § 301 for violation of a union constitution," seeming to suggest that they are now asserting a claim under Section 301. (Dkt. No. 81, at 24-25 [Pls.' Opp'n Mem. of Law].) However, nowhere in their Complaint do Plaintiffs reference Section 301, even where they reference the LMRDA and the specific provisions related to their LMRDA claims. (Dkt. No. 1, at ¶¶ 1-3 [Pls.' Compl.].) Most tellingly, in alleging the basis for jurisdiction over this suit, Plaintiffs state that "[t]his Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C.A. § 412 *and supplemental jurisdiction to entertain Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367*." (Dkt. No. 1, at ¶ 4 [Pls.' Compl.] [emphasis added].) Given that the breach-of-contract claims are the only asserted claims that could reasonably be considered state law claims, the Court find that Plaintiffs' breach-of-contract claims are asserted

as state law claims, not claims arising under Section 301.

The Court agrees with Defendants that Plaintiffs' perceived attempt to amend their breach-of-contract claims at this stage must be denied due to both the excessive delay in attempting to make this amendment and the prejudice that allowing such an amendment would cause to Defendants. *See Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000) ("In general, district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility."). Discovery has long since closed in this case, Defendants have prepared and filed a lengthy dispositive motion based on the claims that were asserted in the Complaint, and this case has been pending without resolution for three years at the time of this decision. Additionally, Plaintiffs have offered no explanation for why they did not attempt to make this amendment earlier despite the fact that they reasonably should have known of their ability to bring a claim under Section 301 at the time they filed the original Complaint. *See Oneida Indian Nation of New York State v. Cnty. of Oneida, N.Y.*, 199 F.R.D. 61, 74 (N.D.N.Y. 2000) ("[T]he district court plainly has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant."). Plaintiffs have also been represented by counsel during the preparation of their Complaint and throughout the course of this litigation. As a result, the Court denies any request by Plaintiffs to amend the Complaint and will proceed to assess Plaintiffs' breach-of-contract claims as state law claims.

It is well established that a state-law claim based on violation of a union constitution or by-laws is preempted by the LMRA where consideration of that claim is inextricably intertwined with consideration of the terms of a labor contract. *See Vera v. Saks & Co.*, 335 F.3d 109, 114

(2d Cir. 2003) ("[W]hen a state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by [LMRA § 301] and must instead be resolved by reference to federal law."); *Control Network Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Local Union 236*, 145 F. Supp. 3d, 161, 165 (N.D.N.Y. 2015) (Sharpe, J.) ("Section 301 of the LMRA preempts state law claims that are 'inextricably intertwined with consideration of the terms of the labor contract."); *Silverman v. Miranda*, 116 F. Supp. 3d 289, 307 (S.D.N.Y. 2015) ("To determine whether § 301 preemption applies, the court begins with consideration of the elements of plaintiff's stated claim, and then considers whether adjudication of any element of that claim requires interpretation of the parties' [labor contract]."); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) ("[S]tate-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by those agreements.").  The term "labor contract" has been defined to specifically include a union constitution, and it is well established that a member is entitled to sue his or her union.  *Wall v. Constr. & Gen. Laborers' Union, Local 230*, 224 F.3d 168, 178 (2d Cir. 2000).[16] Because the Court would be required to interpret the PEF Constitution when deciding whether Defendants breached their duties to follow the procedure required by the PEF Constitution, any

---

[16]        Defendants raise the issue of whether the PEF Constitution is a "local constitution," which courts have found are not covered by Section 301.  *Green v. Brigham*, 03-CV-5190, 2005 WL 280327, at *11 (E.D.N.Y. Feb. 3, 2005) (collecting cases); *Dinuzzo v. Local 79, Laborers Int'l Union of N. America, AFL-CIO*, 2003 WL 21378596, at *3 (S.D.N.Y. June 16, 2003) (citing *Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 288 [7th Cir. 1996]).  However, whether or not the PEF is affiliated with other unions (as Defendants note), the PEF Constitution's discussion of the structure of PEF Divisions (which indicates that each Division must have its own constitution that is consistent with the PEF Constitution) provides evidence that the PEF Constitution is a contract "between . . . labor organizations" (i.e., PEF and its Divisions) and is therefore covered by Section 301.  29 U.S.C. § 185(a).

state-law version of this claim is preempted by Section 301 and therefore must be dismissed.

As to the breach-of-contract claim based on the alleged violations of the PEF Code of Ethics, that Code of Ethics is not necessarily part of the PEF Constitution or any collective bargaining agreement as is typically seen in preemption cases. Unlike the PEF Constitution, the PEF Code of Ethics is not ostensibly a contract between the PEF and its Divisions. Rather, the Code of Ethics is essentially a contract between the PEF and its members, requiring that certain ethical standards will be complied with (the breach of which can result in discipline), and that certain procedural processes will be followed in the event of a need to impose such discipline. The Court notes in particular that the PEF Code of Ethics states that the "PEF, its officers and members" can be charged with violations; it does not state that a Division itself can be charged with a violation. (Dkt. No. 24, Attach. 3, at 1.) The Court therefore finds that, under the circumstances, the PEF Code of Ethics is not a "labor contract" covered by Section 301 and thus preemption does not apply to Plaintiffs' breach-of-contract claim brought pursuant to the PEF Code of Ethics.

Having found that Plaintiffs' breach-of-contact claim based on the PEF Code of Ethics can proceed as a state law claim, and having found that all of Plaintiff's asserted federal law claims must be dismissed, the Court declines to exercise supplemental jurisdiction over this remaining state law claim. In deciding whether to retain jurisdiction, the court must balance "the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 124 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 [1988]). The Supreme Court has instructed that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point

56

toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7; *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (noting that, although there are reasons supplemental jurisdiction might be retained by a federal court even after dismissal of the federal claims, "[i]n general . . . , our circuit takes a very strong position that state issues should be decided by state courts" and "a district court must have truly strong reasons to exercise supplemental jurisdiction over any state-law claims").

The Court finds that this is the usual case in which the *Cohill* factors indicate that supplemental jurisdiction should not be retained. Having determined that Section 301 does not apply to Plaintiffs' remaining breach-of-contract claim, there is minimal-to-no federal interest in exercising jurisdiction over that claim; it involves matters of state law and would be more appropriately assessed by a state court. As a result, the Court finds that Plaintiffs' state law claim should be dismissed without prejudice to refiling in state court within the time periods governing that claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 73) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' claims pursuant the LMRDA for violation of their right to a fair hearing and for retaliation, as well as their state law claim for breach of contract based on alleged violations of the PEF Constitution, are **<u>DISMISSED</u> with prejudice**; and it is further

**ORDERED** that Plaintiffs' state law breach-of-contract claim based on alleged violations of the PEF Code of Ethics is **<u>DISMISSED</u> without prejudice** to refiling in state court within the time period governing that claim; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 31, 2020
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge